No. 93-628

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

     Plaintiff and Respondent,

-vs-

TIMOTHY JEROME HULBERT,

     Defendant and Appellant.

FILED

JUN 2 1 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron L. Robb, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Karl Knuchel, Attorney at Law, Livingston,
          Montana

     For Respondent:

          Hon. Joseph P. Mazurek, Attorney General; John
          Paulson, Assistant Attorney General, Helena,
          Montana

          Wm. Nels Swandal, Park County Attorney,
          Livingston, Montana

Submitted on Briefs: April 28, 1994

Decided: June 21, 1994

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Timothy Jerome Hulbert (Hulbert) appeals the Sixth Judicial District Court's, Park County, denial of his motion to suppress the results of a search conducted by the Livingston Police Department pursuant to a search warrant issued January 12, 1993, by the Justice of the Peace. Hulbert also appeals the District Court's findings of fact and conclusions of law which found him guilty of criminal possession of dangerous drugs with the intent to sell, a felony, and guilty of criminal possession of drug paraphernalia, a misdemeanor. We affirm.

The issues are:

I Was the January 12, 1993, search warrant based on probable cause?

II Was the State required to prove that Hulbert had in excess of one kilogram of marijuana to charge and convict him of criminal possession with the intent to sell pursuant to § 45-9-103(1), MCA?

Based on tips from a confidential informant, Livingston Police Chief, Lynn Gillett, on January 12, 1993, applied for and received a search warrant to search Hulbert's Livingston residence. At 8:00 p.m., Chief Gillett and three other law enforcement officers served the search warrant. The officers entered the house and found Hulbert and Thomas Gibson inside.

The officers secured the house and videotaped items which were in plain view. The officers then searched the house and seized forty-three items of evidence. On the main floor of the residence

2

they found and seized several marijuana pipes, an Ohaus triple-beam balance scale and other drug paraphernalia.

The basement door was locked and the officers asked Hulbert to unlock the door. He refused and the officers removed the door from the hinges to check the basement. In the basement the officers found five small marijuana plants, three medium sized marijuana plants and one large marijuana plant. The plants were located in two rooms equipped with several huge grow lights and an elaborate scheme of plant feeder tubes, timers and fans. The officers also found transformers, pumps, reflectors, buckets, potting soil, other planting materials and a file folder marked "grow room" which documented various expenses and provided a ledger with names and figures.

Chief Gillett described the grow operation as a sophisticated set up which could run itself through the use of timers and other electrical equipment. The plants were sent to the State Crime Lab. The Crime Lab confirmed that the plants were marijuana and determined that the plants weighed 111.67 grams.

On February 12, 1993, the Park County Attorney filed an information charging Hulbert with: 1) criminal sale of dangerous drugs, marijuana, by cultivation, a felony violation of § 45-9-101, MCA (1991); and 2) criminal possession of drug paraphernalia, a misdemeanor violation of § 45-10-103, MCA (1991).

On March 9, 1993, Hulbert filed a motion to dismiss the criminal sale charge. On March 22, 1993, the county attorney filed a motion to amend the information to substitute the criminal sale

3

count with the charge of criminal possession of dangerous drugs with the intent to sell, a felony violation of § 45-9-103(1), MCA (1991). The District Court denied Hulbert's motion to dismiss and granted the State's motion to amend.

Hulbert, on April 30, 1993, filed a motion to suppress the evidence obtained during the January 12, 1993, search. Hulbert argued that the search warrant was not based on probable cause and, thus, the search was invalid. The District Court denied Hulbert's motion. The State amended the information on June 2, 1993, and Hulbert was arraigned on June 15, 1993.

The parties stipulated to certain facts, Hulbert waived his right to a jury trial, and the District Court held a non-jury trial on June 28, 1993. After the parties submitted proposed findings of fact and conclusions of law, the District Court found Hulbert guilty on both charges. The court sentenced him to seven years at the Montana State Prison, four years suspended, on the charge of criminal possession with the intent to sell and a concurrent six months for criminal possession of drug paraphernalia. The District Court stayed the execution of Hulbert's sentence pending this appeal.

I

Was the January 12, 1993, search warrant based on probable cause?

Hulbert argues that the search warrant application did not contain sufficient facts to establish probable cause. According to Hulbert, since the search warrant was not valid, his house was

4

illegally searched and the District Court should have suppressed the evidence obtained from that search.

It is well established that the "totality of the circumstances" test is used to determine whether probable cause supports the issuance of a search warrant. State v. Neely (Mont. 1993), 862 P.2d 1109, 1110, 50 St.Rep. 1363, 1364. We review the circumstances set forth in the affidavit and consider whether the issuing magistrate had a substantial basis for concluding that probable cause existed. State v. Sunberg (1988), 235 Mont. 115, 122, 765 P.2d 736, 741. Probable cause is established if there is a fair probability that incriminating items will be found at the place described in the search warrant. Sunberg, 765 P.2d at 739.

In this case, Chief Gillett submitted a search warrant affidavit setting forth these facts:

> On or about the 5th day of December, 1992, I, Chief of Police Lynn H. Gillett, met with confidential informant #264 at the Livingston Police Department. CI264 has on numerous occasions given affiant and other law enforcement officers information that has proven to be reliable and accurate upon further investigation.
>
> CI264 stated he had received information that a subject by the name of Timothy Hulbert is currently growing marijuana in the basement of his residence. Hulbert's residence is located at the old Broken Stirrup Saddelry which is west of the Yellowstone Truck Stop on Old Highway 10 West. CI264 stated he has known Hulbert for several years during which time he has had personal knowledge that Hulbert has grown marijuana on numerous occasions. Hulbert is known to grow mostly bud which has been known to sell for several thousand dollars a pound. CI264 advised that the grow operation will be in two separate rooms. One room for starter plants and one room for larger plants.
>
> On or about December 15, 1992, CI264 called, stating that he had been in the Hulbert residence to visit Hulbert and while there observed that the door leading

into the basement of the residence where the grow operation is located was covered with plywood and fastened with screws. CI264 stated that this would be normal for Hulbert because he would not want anyone in the rooms or light let in at the wrong time. CI264 has also known Hulbert, with the assistance from an electrician, to by-pass the electric meter to get power for his grow operations to avoid detection by law enforcement if they were to check his power bills. CI264 stated Hulbert usually takes out a six month lease on a residence other than his own residence to conduct his grow operations, but Hulbert has been low on money, making it impossible to lease a separate location, so he set the grow up in his own residence. The grow operation should be on timers and a grow takes approximately seventy (70) days. CI264 was also told personally by Hulbert that he was indeed growing marijuana, but was unable to show the plants because there were too many people around.

On or about December 20, 1992, affiant was contacted by CI264 who stated he had been at the Hulbert residence and a male subject from Wyoming who is staying with Hulbert showed CI264 starter plants in a small room in the basement. CI264 was only able to view the starter plants for a short time because someone else knocked on the door to the residence and they had to leave the basement. CI264 did observe approximately ten (10) starter plants in peat moss in the room.

During the months of December 1992 and start of January 1993, CI264 reported that on several occasions Hulbert has had parties at his residence where alcohol and illegal drugs were consumed. During this time, Hulbert appeared to CI264 to be using alcohol and drugs to excess and has become very paranoid even towards his close friends. CI264 has been told by friends of Hulbert's that when they went to his residence, he would peek out the curtain, but not open the door. CI264 has also personally observed Hulbert act this way when he is strung out on cocaine. Also, CI264 knows Hulbert is always very observant of law enforcement while he has a grow growing.

On January 8, 1993, affiant received from Montana Power Company a computer printout of the power usage at Hulbert's residence, a copy of which is attached. The printout reflects usage before and after Hulbert had the power put in his name. The power was placed in Hulbert's name in April 1992. The following comparisons were made from the printout. The month of October 1991 compared to 1992 - the difference in kilowatt hours is 1,980 KWH more

6

usage in 1992. November 1991 compared to November 1992 - the kilowatt usage was 1,388 KWH more in 1992. December 1991 compared to December 1992 - the kilowatt usage was 1,032 KWH more in 1992. Affiant believes that the power records indicate a substantial increase in power usage which would indicate the use of grow lights and assorted equipment used in the growing of marijuana.

Since December, 1992, affiant has observed on numerous occasions suspected drug users parked at or leaving Hulbert's residence. Also, Hulbert's vehicles have been parked at the residence and all information received states that Hulbert is the occupant of the residence.

Hulbert argues that certain facts in the search warrant affidavit contain hearsay statements which are inadequate to establish probable cause. However, "[r]eliable hearsay information may be considered to establish probable cause." State v. Jensen (1985), 217 Mont. 272, 277, 704 P.2d 45, 48. Reliability can be established through corroborative evidence or surrounding facts which support the conclusion that it is probable that incriminating items will be found at the place to be searched. Jensen, 704 P.2d at 48.

We refuse to review a search warrant application sentence by sentence, rather we examine the entire affidavit to determine whether the issuing magistrate had a substantial basis to conclude that probable cause existed. Sunberg, 765 P.2d at 741. Although CI264 stated that he had received information that Hulbert was growing marijuana in his residence, this hearsay statement was supported by these surrounding facts: 1) CI264 had personally observed ten starter marijuana plants in Hulbert's basement; 2) CI264 specifically stated that the plants were in two basement rooms--one room containing starter plants and one room containing

7

larger plants; 3) Hulbert admitted to CI264 that Hulbert was growing marijuana in his basement; and 4) CI264 also knew that Hulbert's operation contained timers. Moreover, the police corroborated CI264's statement by observing the presence of suspected drug users at or leaving Hulbert's residence and analyzing Hulbert's increased use of electricity in 1992 as compared to the amount used in 1991. We conclude that the hearsay statement of CI264 was supported by surrounding facts and police corroboration which justified the issuing magistrate's conclusion that probable cause existed to search Hulbert's residence.

Hulbert next argues that the affidavit does not establish that CI264 was reliable. According to Hulbert the conclusory statement that "CI264 has on numerous occasions given [Gillett] and other law enforcement officers information that has proven to be reliable and accurate upon further investigation" is not sufficient to establish CI264's reliability.

While the reliability of an informant is an important consideration under the "totality of the circumstances" test, we have never required an affidavit to particularly describe each incident in which an informant provided reliable and accurate information. We conclude that a sworn statement by a law enforcement officer that an informant was reliable and accurate on other occasions is an acceptable method to establish an informant's reliability. See State v. Hendrickson (1985), 217 Mont. 1, 5, 701 P.2d 1368, 1371; State v. Seaman (1989), 236 Mont. 466, 472, 771 P.2d 950, 953-54.

8

Finally, Hulbert argues that since CI264 observed the marijuana plants three and one-half weeks before the search warrant was issued, there was no proof that the plants would be in existence at the residence when the warrant was issued. Hulbert contends that CI264's observations were stale and, thus, probable cause did not exist.

Staleness depends on the nature of the property which is the object of the search warrant. State v. Walston (1989), 236 Mont. 218, 223, 768 P.2d 1387, 1390. However, if it is established that the criminal activity is continuing, "a greater amount of time may elapse between the observation of the activity and the application for a search warrant without negating probable cause." Walston, 768 P.2d at 1390.

Here, the target of the search was not only the marijuana plants, but also the grow operation which existed in Hulbert's basement. Moreover, CI264 stated that a grow takes seventy days and that he saw starter plants in the basement on December 20, 1992. Since Hulbert had marijuana starter plants in his basement on December 20, 1992, and it took seventy days to grow marijuana, the District Court correctly concluded that the informant's observations were not too remote to negate probable cause.

After a careful review of the entire affidavit, we conclude that under the "totality of the circumstances" test the justice of the peace had a substantial basis to conclude that it was probable that incriminating items would be found at Hulbert's residence. These facts establish that the justice of the peace was justified

9

in concluding that probable cause existed: 1) the substantial increase in power usage; 2) observation of suspected drug users at Hulbert's residence; 3) CI264's personal observations of Hulbert's grow operation; 4) Hulbert's drug parties; and 5) Hulbert's admissions to CI264 that Hulbert was growing marijuana in his basement. The District Court properly denied Hulbert's motion to suppress.

## II

Was the State required to prove that Hulbert had in excess of one kilogram of marijuana to charge and convict him of criminal possession with the intent to sell pursuant to § 45-9-103(1), MCA?

Initially, Hulbert was charged with possession of drug paraphernalia and criminal sale of dangerous drugs by cultivation. Because of our decision in State ex rel. Zander v. District Court (1979), 180 Mont. 548, 591 P.2d 656, the State moved to delete the criminal sale charge and amend the information to charge Hulbert with criminal possession of dangerous drugs with the intent to sell. The State did not file a separate affidavit to support the amended charge, but instead relied on the affidavit from the initial charge. We have previously held that when the initial affidavit establishes probable cause as to the amended charge, the State is not required to submit a second affidavit to support the amended charge. State v. Ecker (1990), 243 Mont. 337, 340, 792 P.2d 1079, 1081.

Here, Hulbert argues that the initial affidavit is insufficient since it does not allege that Hulbert possessed in

10

excess of one kilogram of marijuana. According to Hulbert the State was required to prove that he possessed in excess of one kilogram of marijuana in order to charge and convict him of criminal possession of dangerous drugs with the intent to sell--§ 45-9-103(1), MCA. We disagree.

Prior to 1987, § 45-9-103(1), MCA, stated:

> A person commits the offense of criminal possession with intent to sell if he possesses with intent to sell any dangerous drug as defined in 50-32-101. No person commits the offense of criminal possession with intent to sell marijuana unless he possesses 1 kilogram or more.

The Annotator's note to § 45-9-103(1), MCA, refers to the second sentence as creating "a conclusive presumption of no intent to sell where marijuana is possessed in amounts less than one kilogram." However, in 1987, the legislature deleted the second sentence of § 45-9-103(1), MCA. Although we discussed § 45-9-103(1), MCA, in State v. Garberding (1990), 245 Mont. 356, 801 P.2d 583, we did not apply any presumption for or against the defendant, concerning the quantity of marijuana and the defendant's intent to sell. Our holding in Garberding did not, as Hulbert suggests, resurrect the conclusive presumption which the legislature deleted from § 45-9-103(1), MCA, in 1987. We hold that § 45-9-103(1), MCA, does not require the State to prove possession in excess of one kilogram of a dangerous drug to convict a person of possession of dangerous drugs with the intent to sell.

However, the State is required to prove that the person intended to sell the drugs. We have previously recognized the difficulty in proving criminal intent. State v. Hall (1991), 249

11

Mont. 366, 371, 816 P.2d 438, 441. "Because it is seldom subject to direct proof, intent must be inferred from the acts of the accused and the facts and circumstances of the offense." Hall, 816 P.2d at 441. In Hall, we concluded that the presence of drugs and other items commonly used in drug transactions--such as scales, containers, packaging materials and individually packed drugs-- support an inference of intent to sell. 816 P.2d at 441.

Here, Hulbert had a large grow operation with an elaborate set of timers, feeder tubes, fans, vents, lights and potting materials in his basement. The police confiscated nine marijuana plants and other items which are commonly used in drug transactions: 1) an Ohaus triple-beam balance scale; 2) various pipes and bongs; and 3) a manila folder marked "grow room" containing names and an expense ledger. These cumulative facts justified an inference that Hulbert intended to sell the marijuana. We hold that there was sufficient proof to support the District Court's verdict. Accordingly, we affirm Hulbert's conviction and the sentence imposed on him by the District Court.

We concur:

_____
Chief Justice

_____

_____
Justices

_____
Justice

12

June 21, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


KARL KNUCHEL
Attorney at Law
P.O. Box 953
Livingston, MT 59047

HON. JOSEPH P. MAZUREK, Attorney General
        Assistant
Justice Bldg.
Helena, MT 59620

Wm. Nels Swandal
Park County Attorney
414 East Callender Street
Livingston, MT 59047


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy