No. 94-068

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

      Plaintiff and Respondent,

  -v-

BECKY L. SARBAUM,

      Defendant and Appellant.

FILED

MAR 07 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Amy N. Guth, Public Defender's Office, Libby, Montana

      For Respondent:

          Hon. Joseph Mazurek, Attorney General, Barbara Harris, Assistant Attorney General; Scott B. Spencer Lincoln County Attorney, Libby, Montana

Submitted on Briefs: November 23, 1994

Decided: March 7, 1995

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from the Nineteenth Judicial District Court, Lincoln County, from the denial of the defendant's motions to disclose the identity of a confidential informant and to suppress the evidence seized pursuant to the search warrant issued on April 12, 1993. We affirm.

The following are issues on appeal:

I. Did the District Court err in denying the defendant's **motion to** require disclosure of the identity of the confidential informant who provided information set forth in the affidavit in support of the application for a search warrant?

II. Did the District Court err in denying the defendant's motion to suppress the evidence seized pursuant to the search warrant in the search of her home?

FACTUAL AND PROCEDURAL BACKGROUND

In his affidavit and application for a warrant to search the home of Becky L. Sarbaum (Sarbaum) dated April 12, 1993, Lincoln County Sheriffs Department Detective Klint H. Gassett (Gassett) stated that the offense of Criminal Possession with Intent to Sell, a felony, in violation of § 45-g-103, MCA, had been committed. The affidavit described the Sarbaum residence and the items believed to be located on the premises, such as growing marijuana plants and equipment, packaged marijuana and drug paraphernalia. The affidavit set forth Gassett's experience and knowledge in drug investigations and marijuana grow operations.

Gassett went on to state that a confidential informant, known

2

to be credible and reliable, had provided him with information about drug activities at the Sarbaum home. Gassett's affidavit states that the confidential informant was in the Sarbaum home approximately four times within the three months preceding his application. During the course of that time, according to the confidential informant, Sarbaum had grown some marijuana plants to maturity and started some new plants. The confidential informant stated that he had seen about 30 plants of varying sizes in the basement of the home and under the pumphouse on the property during different visits. The confidential informant provided this information from his own observations at the Sarbaum residence.

The affidavit also states that Sarbaum's husband, Blaine, told the confidential informant that he (Mr. Sarbaum) cloned marijuana; that the plants were grown for profit; that he (Mr. Sarbaum) planned to enlarge the growing operation; and when the most recent plants would be ready for harvest. The affidavit noted that the confidential informant had informed Gassett that the most recent plants would be ready for harvest around April 12, 1993, the time of the application for the search warrant.

In further support of his application, Gassett also provided further information from two detectives who had been at the Sarbaum home. Detective Bernall, who is familiar with the odor of growing marijuana, had been at the home on February 28, 1993, on an unrelated matter and smelled the odor of growing marijuana in the residence. Officer Sweet had also been to the residence on two other unrelated matters. On April 10, 1993, Sweet answered a

possible domestic abuse call at the home and even though Ms. Sarbaum was no longer in the home, Mr. Sarbaum would not let the police officer enter the home. In the fall of 1992, Sweet was at the residence regarding an injury of one of the Sarbaum children and Sarbaum was more concerned about getting the officer out of the home than about the injured child.

The Lincoln County Justice of the Peace issued the search warrant on the same day that the application was made. During the search, marijuana, marijuana stems and stalks, grow equipment, drug paraphernalia and weapons were seized. An information was filed on April 27, 1993, charging Mr. and Mrs. Sarbaum with criminal possession with intent to sell, in violation of § 45-g-103, MCA. (The charges against defendant's husband, Blaine Sarbaum, were resolved and are not the subject of this opinion).

On May 21, 1993, the defendant filed a motion and supporting brief for an order requiring disclosure of the identity of the confidential informant. On September 24, 1993, the defendant filed a motion and supporting brief to suppress the evidence seized in the search of her home. On October 4, 1993, the District Court denied the defendant's motion to disclose the identity of the confidential informant. On December 6, 1993, the District Court issued an order granting the defendant's motion for suppression of the evidence seized in the search, finding the information which supported the search warrant to be stale.

On December 9, 1993, the State filed a motion to reconsider the court's order granting the defendant's motion to suppress based

4

on our recently issued opinion in State v. Rinehart (1993), 262 Mont. 204, 864 P.2d 1219, decided December 2, 1993. The State asserted in the motion that the "Rinehart/McAtee case stands for the proposition that information from an informant of known reliability is sufficient to establish probable cause." In an order filed January 6, 1994, the District Court reconsidered its prior decision and denied the defendant's motion to suppress.

On January 13, 1994, the defendant entered an Alford plea and signed a plea bargain agreement, reserving the right to appeal any pre-trial motions in the matter. Sarbaum's plea of guilty and the plea bargain agreement were accepted by the Court on January 26, 1994. On that same day, the court dismissed the charge of criminal possession with intent to sell, and the State filed an amended information charging defendant with criminal possession of dangerous drugs. Sarbaum received a two-year deferred sentence and on January 31, 1994, she appealed the issues of the court's refusal to require disclosure of the identity of the confidential informant and its denial of her motion to suppress.

DISCUSSION

I. Did the District Court err in denying the defendant's motion to require disclosure of the identity of the confidential informant who provided information set forth in the affidavit in support of the application for the search warrant?

The government's privilege to refuse to disclose the identity of a confidential informant is subject to a balancing test enunciated in Roviaro v. United States (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. In that case the United States Supreme Court stated:

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

Roviaro, 353 U.S. at 62. This Court adopted that test in State v. Crowder (1991), 248 Mont. 169, 176, 810 P.2d 299, 303.

Furthermore, with respect to the necessity of disclosing the identity of an informant, Rule 502, M.R.Evid., provides:

Identity of informer.
(a) Rule of privilege. The United States or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law.
(b) Who may claim the privilege. The privilege may be claimed by an appropriate representative of the public entity to which the information was furnished.
(c) Exceptions and limitations.
. .
(2) Testimony on relevant issue. If it appears in the case that an informer may be able to give testimony relevant to any issue in a criminal case or to a fair determination of a material issue on the merits in a civil case to which a public entity is a party, and the public entity invokes the privilege, the court shall give the public entity an opportunity to show facts relevant to determining whether the informer can, in fact, supply that testimony.

Given the above authority, and based on our review of the record in the instant case, we conclude that disclosure of the identity of the confidential informant was properly denied. In Crowder, we stated that the defendant must show the need for revealing the informant's identity and that mere speculation or conjecture that his testimony will be relevant is insufficient to

**require that his identity be revealed.** <u>Crowder,</u> 810 P.2d at 304.

In the instant case, the defendant's attorney argued in the July 27, 1993, hearing, that the confidential informant "may indeed be an exculpatory witness for [Sarbaum]." This is precisely the sort of mere speculation and conjecture that was discussed in <u>Crowder</u> and in State v. Babella (1989), 237 Mont. 311, 315, 772 P.2d 875, 878, and which we determined to be an insufficient basis for requiring disclosure of an informant's identity.

Moreover, the <u>Roviaro</u> balancing test, under these circumstances, weighs in favor of the nondisclosure of the identity of the confidential informant. <u>Roviaro,</u> 353 U.S. at 62; <u>Babella,</u> 772 P.2d at 876. The State has a strong interest in protecting the flow of information regarding the drug trade within Lincoln County. <u>Roviaro,</u> 353 U.S. at 62; <u>Babella,</u> 772 P.2d at 876. The State has demonstrated that this flow of information could be impaired without the probable future services of the confidential informant.

Gassett testified that there was "very much" a risk if the State disclosed the identity of the informant. Also, in an affidavit by Gassett before the District Court, he stated that the confidential informant may be in physical danger if his identity was disclosed; that disclosure would destroy the government's ability to use the confidential informant as a future source of information and that he (Gassett) had reason to believe that the informant would continue to provide information to the Sheriffs Department. We conclude that the State, in response to Sarbaum's request, demonstrated that disclosure of the identity of the

7

confidential informant would result in a substantial risk to the informant and/or his operational effectiveness, which, in turn, would negatively impact the flow of information about the drug trade in Lincoln County.

Sarbaum did not demonstrate that her right to prepare a defense would be impaired by the nondisclosure of the confidential informant. Roviaro, 353 U.S. at 62; Babella, 772 P.2d at 876. As stated above, Sarbaum could only speculate that the confidential informant might provide exculpatory information that would, in some manner, be relevant to her case. She failed to demonstrate that the identity of the confidential informant was essential to the preparation of her defense. Moreover, testimony at a motions hearing revealed that the defendant and her husband were fairly certain as to the identity of the confidential informant. Accordingly, they had only to subpoena the confidential informant as a witness.

Moreover, she failed to demonstrate under Rule 502, M.R.Evid., that, as stated above, the confidential informant could present relevant testimony on a material issue in the case.

> This rule [502] allows the government to refuse to disclose the identity of an informant, subject to certain exceptions. The exception applicable in this case provides that if an informant can give testimony relevant to any issue in a criminal case, and the government claims the privilege, the trial court must determine if the defendant's right to prepare his defense will be impinged by the government's interest in protecting the flow of information by informants. If the trial court determines that the defendant's rights will be violated if the informant is not identified, and the government refuses to identify the informant, the court must dismiss the charges against the defendant. Even before this rule was adopted, Montana followed the same balancing test,

which was set forth by the United States Supreme Court in Roviaro v. United States (1959), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639.

State v. Chapman (1984), 209 Mont. 57, 65, 679 P.2d 1210, 1215. In the instant case, the informant did not testify nor did the defendant demonstrate that Sarbaum's right to prepare her defense would be impinged by the government's interest in protecting the flow of information by the informant. Sarbaum did not show under the Roviaro balancing test or under Rule 502, M.R.Evid., that the informant could provide testimony on any relevant issue in the instant case. Sarbaum provided only speculation and conjecture, which is insufficient to warrant the disclosure of the identity of the informant. Crowder, 810 P.2d at 304. The State's interest in protecting the flow of information by informants does not impinge upon Sarbaum's right to prepare her defense and accordingly, we conclude that the District Court correctly determined that the disclosure of the confidential informant was not mandated.

Sarbaum also argued that she was entitled to disclosure of the confidential informant because she was "entrapped" by the law enforcement officers. We conclude, however, that there is no support in the record for any such claim, and we decline to address that argument further.

We hold that the District Court did not err in denying the defendant's motion to disclose the identity of the confidential informant.

We note that both parties argued the applicability of § 46-15-324(3), MCA. Section 46-15-324(3), MCA, provides that the

9

existence or identity of **an informant who will not** be called to testify is not required if disclosure would result in substantial risk to the informant or his operational effectiveness and the failure to disclose will not infringe the constitutional rights of the accused. Although subsection (3) of the statute was in effect prior to 1991, the Legislature amended § 46-15-324, MCA, by deleting subsection (3) during the 1991 session. The Legislature again amended § 46-15-324, MCA, during the 1993 session by reinserting subsection (3).

In the instant case, the defendant filed her motion to disclose the identity of the informant in May of 1993. The 1993 amendment to § 46-15-324, MCA, which reinserted subsection (3) into the statute was not in effect until October of 1993. Therefore, at the time the defendant filed her motion for disclosure, the 1991 version of the statute was in effect; this version of the statute does not contain subsection (3) of § 46-15-324, MCA. Both parties therefore, argue the applicability of a statute which was not in effect at the time of the defendant's **motion.** We remind counsel that it is their obligation to ensure that the statutes they cite are in effect and are, thus, authority for the legal arguments being made.

II. Did the District Court err in denying the defendant's motion to suppress the evidence seized pursuant to the search warrant in the search of her home?

The defendant also challenges the District Court's denial of her motion to suppress evidence seized during the execution of the search'warrant. She contends that much of the information supplied

10

to the magistrate by the State was stale; that the State failed to corroborate the confidential informant's information; and that, as a result, the affidavit and application for the search warrant failed to establish probable cause to issue the warrant.

The State counters that the defendant's claim that the information in the search warrant was stale is not supported by the facts and case law. The State also argues that the confidential informant was reliable and credible and that information supplied by the police officers, in addition to that supplied by the confidential informant, demonstrated sufficient probable cause for a warrant to issue

> It is well established that the "totality of the circumstances" test is used to determine whether probable cause supports the issuance of a search warrant. We review the circumstances set forth in the affidavit and consider whether the issuing magistrate had a substantial basis for concluding that probable cause existed. Probable cause is established if there is a fair probability that incriminating items will be found at the place described in the search warrant. (Citations omitted.)

State v. Hulbert (1994), 265 Mont. 317, 321, 877 P.2d 25, 27.

Here, the search warrant described the premises to be searched in detail. It states that the affiant, Detective Gassett, is trained and experienced in the detection of illegal drugs and provides background information to support his statement that he is knowledgeable about illegal drugs and marijuana grow operations. The affidavit further stated that the confidential informant was credible and reliable, had been in the home of the defendant a number of times, had seen the marijuana grow operation, and had spoken with the Sarbaums about the marijuana grow operation. The

11

confidential informant provided very specific information about the grow operation. Moreover, as noted in our discussion of issue I, the affidavit contained information from two other police officers that supported the likelihood that the Sarbaums were conducting an illegal activity in their home

We conclude that the information provided by the confidential informant, whom the applicant, an experienced police officer, stated was credible and reliable, together with the observations of the other two officers, under the totality of circumstances, provided a substantial basis upon which the issuing magistrate could conclude that there was a fair probability that incriminating items would be found on the Sarbaums' premises. Hulbert, **a77** P.2d at 30.

Moreover, we also conclude that the defendant's argument that the information in the application was stale is without merit. As we observed in State v. Pierre (1984), 208 Mont. 430, 436-37, 678 P.2d 650, 654:

> The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch the clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed.

Rinehart, 864 P.2d at 1224-25.

The affidavit in the instant case states that the confidential

12

**informant was in the** Sarbaum **home about four times in the** three months prior to the application and "[t]he time between the first time in the residence and the last time in the residence [was] approximately two months." The confidential informant stated that the most recently planted marijuana plants would be ready for harvest around the time of the application for the search warrant. The other police officers had been in the home in the fall of 1992, on February 28, 1993, and on April 10, 1993.

The information provided from these dates is not too remote in time, and the information is not stale. While some of this information, considered individually, might be considered stale, "[w]hen a criminal activity is continuing in nature . . more time may elapse between the observation of the activity and the application for the search warrant without negating probable cause." Rinehart, 864 P.2d at 1225. When the earlier information is combined with more recent information, the earlier information carries greater weight in the determination of probable cause. Rinehart, 864 P.2d at 1225. "Considering the continuous nature of a marijuana growing operation, the information provided in the application for the search warrant was not too stale to prohibit a determination of probable cause under the totality of the circumstances." Rinehart, 864 P.2d at 1225. We likewise conclude that, here, the information in the application was not too stale to support a determination of probable cause. See also; Hulbert, 877 P.2d at 29, (the observation of marijuana plants by a confidential informant three and one-half weeks before the search warrant was

13

issued **was not "stale" information.)**

The defendant also questions the reliability of the informant. This argument, too, is not persuasive. In _Rinehart,_ we reiterated that a statement in the affidavit by the affiant attesting to an informant's past reliability is sufficient to establish the reliability of an informant. _Rinehart,_ 864 P.2d at 1223-24. In fact, an officer may even rely on information about an informant's reliability from other police officers. See State v. Seaman (1989), 236 Mont. 466, 771 P.2d 950. The reliability of the confidential informant in the instant case was sufficiently established by Detective Gassett's statements attesting to the informant's reliability and credibility.

Finally, Sarbaum's argument that the information from the confidential informant was not sufficiently corroborated is not well taken. "Corroboration of an informant's information through other sources is necessary when the information is hearsay or the informant is anonymous." _Rinehart,_ 864 P.2d at 1224; see also _Crowder,_ 810 P.2d at 302. In the instant case, the confidential informant provided information based on his own personal observations of the grow operation in the Sarbaum home. Statements of personal observation are not hearsay. _Rinehart,_ 864 P.2d at 1224. In State v. Walston (1989), 236 Mont. 218, 768 P.2d 1387, we stated that:

> . . . information of a criminal activity known from observation by a previously reliable informant, such as we have in the present case, is sufficient to establish the probability of criminal activity without outside investigation and verification of the reported information.

14

Walston, 768 P.2d at 1390. Here, an informant, determined by an experienced police officer to be credible and reliable, provided information based on his personal observations at the Sarbaum residence. That information was also supported by the observations from other police officers of conduct consistent with illegal activity at the Sarbaum residence. As stated above, under the totality of circumstances, the affidavit and application provided a substantial basis upon which the issuing magistrate could conclude that there was a fair probability that incriminating items would be found on the Sarbaum's premises.

Accordingly, we hold that the District Court did not err in denying the defendant's motion to suppress evidence obtained in the search of the Sarbaum residence.

AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

15