No. 01-830

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 81

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

JAMES KIRK TACKITT,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause No. DC-00-156B
The Honorable Katherine R. Curtis, and Honorable Stewart E. Stadler, Judges presiding.

COUNSEL OF RECORD:

        For Appellant:

            Lane K. Bennett, Kalispell, Montana

        For Respondent:

            Mike McGrath, Montana Attorney General, Mark W. Mattioli, Assistant Montana Attorney General, Helena, Montana; Thomas J. Esch, Flathead County Attorney, Richard Hickel, Deputy Flathead County Attorney, Kalispell, Montana

Heard: October 22, 2002
Submitted: October 22, 2002
Decided: April 15, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Appellant James Tackitt (Tackitt) appeals an order of the Eleventh Judicial District Court, Flathead County, denying his motion to suppress.  We reverse.

¶2    We address the following issues on appeal:

¶3    1. Did the District Court properly conclude that the use of a drug-detecting canine to sniff for drugs in a vehicle parked in an area accessible to the public is not a search?

¶4    2. Did the District Court properly conclude that if the use a drug-detecting canine is a search, the State had particularized suspicion to conduct the investigatory search of Tackitt's vehicle?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶5    On or about June 1, 2000, Corporal Mike Meehan (Corporal Meehan) of the Northwest Drug Task Force (Task Force) received an anonymous call from an individual who asserted that Tackitt was selling drugs.  The individual stated that he personally saw Tackitt with between eight and ten large garbage bags of marijuana on May 31, 2000; that Tackitt told him that the marijuana was from California; that Tackitt told him he wanted to sell it quickly so he could do another load; that Tackitt put the marijuana in his white Subaru Legacy parked at his residence in Kalispell; and that Tackitt said he was going to take the marijuana to his residence in Marion.

¶6    Corporal Meehan checked county records and verified that Tackitt owned a white Subaru Legacy and that he owned property in Marion.  Corporal Meehan went to the Kalispell residence in the mobile home park identified by the anonymous caller, where he found the white Subaru parked.  He also went to the Marion residence where he located

2

another vehicle registered to Tackitt. Corporal Meehan also checked the Task Force records which included reports that Tackitt may have been involved in drug trafficking marijuana in the early 1990's. Finally, Corporal Meehan also checked Tackitt's record and discovered that he had a 1993 misdemeanor conviction for possession of marijuana paraphernalia. In addition to the above information, about two weeks previous to the anonymous call, Sergeant Brock Wilson (Sergeant Wilson) of the Flathead County Sheriff's office reported to the Task Force that he received information from a reliable informant that Tackitt was involved in narcotics trafficking.

¶7 Given this information, Deputy Pete Wingert used a dog named Dantz to conduct a sniff survey of the exterior of the white Subaru while it was parked at the Kalispell residence. Dantz alerted on the trunk of the vehicle, indicating the presence of drugs.

¶8 Based on all the above information, Officer Roger Nasset, also with the Task Force, applied for a search warrant to search Tackitt's Subaru and his Marion residence. Flathead County Justice of the Peace David Ortley reviewed the application and issued a search warrant. The subsequent search of Tackitt's vehicle did not reveal any evidence. The search of Tackitt's Marion residence did not produce eight to ten garbage bags of marijuana, nor did it reveal packing material for this volume of marijuana. The search did however reveal about three and one-half pounds of marijuana, part of which was wrapped in a plastic bag from a California sporting goods store. The search also revealed a bong.

¶9 Based on this evidence, Tackitt was charged with criminal possession of dangerous drugs with intent to distribute, a felony in violation of § 45-9-103, MCA. Tackitt then filed

3

a motion to suppress the evidence discovered at his residence on the grounds that the use of Dantz to detect drugs constituted a search in violation of his privacy rights. After briefing, Judge Katherine Curtis held a hearing on Tackitt's suppression motion. During the hearing, she heard evidence regarding both Dantz's reliability and Tackitt's asserted expectation of privacy in his parking area and vehicle. Further, the court also heard testimony regarding the information in the search warrant application. This testimony revealed that neither Corporal Meehan, nor any other police officer including Sergeant Wilson, could remember who the confidential informant was or identify that person. Subsequently, Judge Curtis issued an order concluding that Tackitt had no reasonable expectation of privacy in the odors emanating from his vehicle while it was parked in an area accessible to the public. In the alternative, Judge Curtis held that if particularized suspicion is required for the use of a drug-detecting canine, the search in this case was supported by proper particularized suspicion. Therefore, the District Court denied Tackitt's motion to suppress.

¶10    After the court's denial, Tackitt pled guilty pursuant to the terms of a plea agreement. However, he reserved his right to appeal the suppression motion to this Court. Judge Stewart Stadler issued a judgment giving Tackitt a deferred sentence for six years with probation conditions. Tackitt now appeals. Further facts are discussed below.

## II. STANDARD OF REVIEW

¶11    We review a court's denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether the court's interpretation and application

4

of the law is correct. *State v. Reesman*, 2000 MT 243, ¶ 18, 301 Mont. 408, ¶ 18, 10 P.3d 83, ¶ 18. In reviewing a motion to suppress evidence discovered as a result of a search pursuant to a valid warrant, we normally review a magistrate's determination of probable cause in the search warrant with deference. *State v. St. Marks*, 2002 MT 285, ¶ 14, 312 Mont. 468, ¶ 14, 59 P.3d 1113, ¶ 14. However, when information must be excised from the application for the search warrant, we review the warrant *de novo* for probable cause. *St. Marks*, ¶ 14.

## III. DISCUSSION

¶12 **1. Did the District Court properly conclude that the use of a drug-detecting canine to sniff for drugs in a vehicle parked in an area accessible to the public is not a search?**

¶13 Tackitt first asserts that the District Court erred in concluding that the use of a canine to detect drugs in his vehicle did not constitute a search. Tackitt argues that he had a reasonable expectation of privacy in both the "curtilage" where his car was parked and in the trunk of his car. Tackitt further asserts that use of a drug-detecting canine invaded his privacy expectation. Consequently, Tackitt argues that probable cause and a warrant were required before the police could use Dantz to search his vehicle.

¶14 The State asserts the District Court correctly determined Tackitt had no reasonable expectation of privacy in either the curtilage or in the odors emanating from his car while it was parked in an area accessible to the public. Therefore the State argues the sniff was properly conducted and served as a proper basis for the later warrant. Alternatively, the State asserts, albeit at the end of its brief in passing, that the use of drug-detecting canines

5

should be allowed based on particularized suspicion and that particularized suspicion supported the use of Dantz in this case.

¶15    The District Court concluded that the concept of curtilage does not apply in Montana. Further, based on both testimony and photos of Tackitt's car parked next to his Kalispell residence which were entered into the record, the court found that the area where Tackitt parked his car was freely accessible to the public. Therefore, the court concluded that Tackitt had no legitimate expectation of privacy in the parking area by his residence. The District Court also held that because the use of a drug-detecting canine is minimally intrusive and only reveals information about the presence of contraband, Tackitt had no reasonable expectation of privacy in the odors emanating from the vehicle while it was parked in an area accessible by the public. The Court stated:

> If the Defendant had an actual expectation of privacy in odors emanating from his vehicle, he should have chosen, and society would expect him to have chosen, a private parking area to which access could be controlled or restricted.

Therefore, the District Court concluded that a warrant was not required for the use of a canine to sniff the exterior of Tackitt's vehicle. The court also made alternate conclusions based on particularized suspicion which we address in the second issue.

¶16    While we disagree with the District Court, and accordingly, agree with Tackitt that he had a reasonable expectation of privacy in the trunk of his vehicle, we do not agree that this expectation necessitated a search warrant for the use of a canine to survey the exterior of his vehicle as discussed below.

6

**A. The Expectation of Privacy**

¶17	We previously addressed the constitutionality of the use of drug-detecting canines in *State v. Scheetz* (1997), 286 Mont. 41, 950 P.2d 722.  That case noted that search analysis to determine proper constitutional criminal procedure in Montana is typically conducted under Article II, Sections 10 and 11 of the Montana Constitution, in addition to the Fourth Amendment to the United States Constitution.  *Scheetz*, 286 Mont. at 45, 950 P.2d at 724. The threshold question in a search case is whether there is an expectation of privacy which society is prepared to recognize as objectively reasonable.  *Scheetz*, 286 Mont. at 46, 950 P.2d at 724.  Assuming there is a reasonable expectation of privacy, the next question to consider is whether or not the nature of the state's intrusion is reasonable under the circumstances.  *Scheetz*, 286 Mont. at 50, 950 P.2d at 727.  *Cf. Skinner v. Railway Labor Executives' Ass'n* (1989), 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639.

¶18	In *Scheetz* we held that the defendant in that case had no reasonable expectation of privacy in the odors emanating from luggage at an airport in part because the luggage was checked.  *Scheetz*, 286 Mont. at 50, 950 P.2d at 727.  We further held that although a person might maintain some privacy interest in the contents of their checked luggage, the use of a drug-detecting canine to search luggage at an airport did not violate any reasonable expectation of privacy because the nature of the government's action was minimally intrusive and only revealed limited information about contraband.  We therefore held that no search occurred.  *Scheetz*, 286 Mont. at 51, 950 P.2d at 728.

¶19	In this case, the State asks us to apply the reasoning of *Scheetz* and hold that Tackitt

7

had no reasonable expectation of privacy in the odors emanating from his vehicle. We disagree. Our holding in *Scheetz* was premised on the fact that "luggage that a person brings to the airport is generally subject to observation by the public or the state . . . [and that] a person cannot expect to conceal completely from the public the odor of the luggage . . . since it must be handled by others." *Scheetz*, 286 Mont. at 49, 950 P.2d at 727. We further noted that by checking his luggage, the defendant lost a significant expectation of privacy because he did not maintain possession and control of the luggage. *Scheetz*, 286 Mont. at 50, 950 P.2d at 727. Therefore, the conclusion that no search occurred relied on our holding that Scheetz had no reasonable expectation of privacy under the facts specific to the situation.

¶20 The same is simply not true in this case. We have repeatedly stated that Montana's Constitution provides its citizens with broader privacy protections. *State v. Elison*, 2000 MT 288, ¶ 46, 302 Mont. 228, ¶ 46, 14 P.3d 456, ¶ 46. Further, we have also previously stated: "What a person knowingly exposes to the public is not protected, but what an individual seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Elison*, ¶ 49 (citing *State v. Bullock* (1995), 272 Mont. 361, 375, 901 P.2d 61, 70). Specifically, in *Elison* we held that Montana's citizens have a reasonable expectation of privacy in areas of their vehicles that are out of plain view. We stated:

> We do believe that when a person rides in an automobile, that person accepts that their actions and any items left uncovered on the dashboard or on the seat are no longer private because of their public visibility. . . . However, when a person takes precautions to place items behind or underneath seats, in trunks or glove boxes, or uses other methods of ensuring that those items may not be accessed and viewed without permission, there is no obvious reason to believe that any privacy interest with regard to those items has been surrendered

8

simply because those items happen to be in an automobile.

*Elison*, ¶ 51. Therefore, when a person stores something in a concealed area of a vehicle and seeks to preserve their privacy, that privacy has constitutional protections.

¶21 Based on *Elison*, the case at bar is unlike the situation in *Scheetz* because here, Tackitt maintained control of his vehicle and had the right to exclude others from its enclosed, concealed areas. Further, none of Tackitt's actions indicate he surrendered this control as did the defendant in *Scheetz*. Indeed Tackitt was not even driving the vehicle on the public roadways at the time. Accordingly, under our holding in *Elison*, Tackitt had a reasonable expectation that anything stored in the trunk of his vehicle would remain private.

¶22 In making this holding, we note that our decision is based on Tackitt's expectation of privacy in the trunk of his vehicle, not on any expectation of privacy in the area next to his residence in which his vehicle was parked. In *Bullock*, we held that in order for a person to have an objectively reasonable expectation of privacy in open lands such that entry is not permitted, that expectation must be unmistakably apparent by, for example, "No Trespassing" signs, gates, fences or other means to convey that privacy expectation to the public. *Bullock*, 272 Mont. at 384, 901 P.2d at 76. In this case, the District Court's finding that the area in which Tackitt's vehicle was parked was freely accessible by the public is supported by testimony of both the manager of the Kalispell mobile home park and the involved officers and by photographic evidence in the record showing the parking area. Therefore, the court's finding is not clearly erroneous. Further, there is no dispute between the parties that Tackitt did nothing to evidence a privacy expectation in the open area where

9

his vehicle was parked. Therefore, our conclusion that Tackitt had a reasonable expectation of privacy in the enclosed and concealed spaces of his vehicle is in no way dependant on where his vehicle was parked. We hold that the use of the canine sniff of Tackitt's vehicle was a search under Article II, Sections 10 and 11 of Montana's Constitution and our case law interpreting those sections.

### B. The Nature of the State's Intrusion

¶23 Having determined that Tackitt had a constitutionally protected privacy interest in the trunk of his vehicle, we now assess the nature of the state's intrusion in order to determine whether the State unreasonably violated Tackitt's privacy right. As mentioned above, the State briefly asserts that the use of drug-detecting canines under these circumstances should not require a warrant, but should instead be allowed when the police have particularized suspicion to believe criminal activity involving drugs is taking place in the area to be surveyed by the canine. Presumably, the State bases its argument on the minimally intrusive nature of the use of a drug-detecting canine and the limited information regarding contraband revealed by that use. Tackitt asserts that under the broader protections of Montana's Constitution, the use of drug-detecting canines should require a warrant. On this point, we agree with the State.

¶24 We have often stated that warrantless searches are per se unreasonable, subject to a few carefully drawn exceptions. *Elison*, ¶ 39. One of those exceptions is the investigatory stop, more commonly known as a *Terry* stop. *State v. Gopher* (1981), 193 Mont. 189, 194, 631 P.2d 293, 296 (citing *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889).

10

This exception to the warrant requirement is intended to guide on-the-street investigating and allows law enforcement to stop persons when they have a "particularized suspicion" that criminal activity is currently taking place. *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. Particularized suspicion results from objective data from which an experienced police officer can make certain inferences that a person is or has been engaged in wrongdoing. *Elison*, ¶ 15.

¶25 In *United States v. Place* (1983), 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110, the United States Supreme Court adopted the rationale of an investigatory stop to address the constitutionality of the use of drug-detecting canines to sniff luggage at airports when the luggage is in the owner's possession. The Court reasoned that in balancing the competing interests of an individual's privacy versus the government's interest in preventing drug trafficking, the use of drug-detecting canines was reasonable based on less than probable cause due to the minimally intrusive and limited revealing nature of a canine sniff. *Place*, 462 U.S. at 706-07, 103 S.Ct. at 2644-45. As a result, current federal precedent allows the use of drug-detecting canines to sniff closed containers that are in public areas when the police have particularized suspicion to believe a crime involving drugs is taking place.

¶26 The question before us then is whether this same reasoning applies under Montana's Constitution. Both parties cite case law from various other states and from the federal circuit courts in support of their arguments. Indeed, we surveyed a number of these cases during our analysis in *Scheetz*. Further, a review of these cases reveals that courts have come to different results depending on the circumstances of the situation. *See State v. Torres* (Conn.

11

1994), 645 A.2d 529 (surveying twenty federal and state cases). While there are numerous variations among the jurisdictions, the cases roughly break down into three categories. First, in cases involving searches of a person or searches of residences, courts have generally determined that the expectation of privacy is paramount. Accordingly, these situations require probable cause, and a warrant when no other exception to the warrant requirement applies, for the use of drug-detecting canines, despite the minimally intrusive nature of the sniff survey. *See e.g. United States v. Thomas* (2d Cir. 1985), 757 F.2d 1359, *cert. denied sub nom. Fisher v. United States* (1985), 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (probable cause required for canine sniff outside residence); *Commonwealth v. Martin* (Pa. 1993), 626 A.2d 556 (canine sniff of defendant's person requires probable cause).

¶27 On the opposite end of the spectrum, courts have also concluded that in certain circumstances no reasonable expectation of privacy exists and therefore the use of a drug-detecting canine does not constitute a search. *See e.g. Scheetz*, 286 Mont. at 51, 950 P.2d at 728 (no search due to no expectation of privacy in the odors emanating from checked luggage); *People v. Mayberry* (Cal. 1982), 644 P.2d 810 (canine sniff of all containers from a certain departure city in non-public baggage area of airport not state constitutional search); *State v. Boyce* (Wash. 1986), 723 P.2d 28 (sniff of safety deposit box at bank not state constitutional search).

¶28 Between these two ends of the spectrum there are cases in which courts have either allowed the use of drug-detecting canines based on particularized suspicion due to the minimally intrusive nature of the sniff or have disallowed the use of the canine sniff absent

12

demonstration of particularized suspicion. *See e.g. Place*, 462 U.S. at 706, 103 S.Ct. at 2644 (particularized suspicion required to use drug-detecting canines to survey luggage in possession of suspect at airport); *City of Indianapolis v. Edmond* (2000), 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (suspicionless use of drug-detecting canines at auto checkpoints violates Fourth Amendment); *United States v. Quinn* (1st Cir. 1987), 815 F.2d 153 (reasonable, articulable suspicion required for canine sniff of stopped car); *McGahan v. State* (Alaska Ct. App. 1991), 807 P.2d 506, 510-11 (canine sniff of warehouse exterior accessible to public is state constitutional search requiring reasonable, articulable suspicion); *People v. Unruh* (Colo. 1986), 713 P.2d 370, 377-78, *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986) (canine sniff of locked safe in possession of police is state constitutional search requiring reasonable, articulable suspicion); *State v. Pellicci* (N.H. 1990), 580 A.2d 710, 715-17 (canine sniff of vehicle's exterior is state constitutional search requiring reasonable, articulable suspicion); *Commonwealth v. Johnston* (Pa. 1987), 530 A.2d 74 (canine sniff of rented storage locker requires reasonable, articulable suspicion).

¶29     After reviewing the case law, we are convinced that the better reasoned cases allow for a carefully drawn exception to the warrant requirement, but still require particularized suspicion when the area or object subject to the canine sniff is already exposed to the public. The government's interest in discouraging illegal drug trafficking is substantial. Further, this area of law enforcement involves investigation into trafficking activities that are difficult to detect because the activities are inherently transient and appear similar to innocent conduct on the surface. On the other side, as the facts of this case demonstrate, a search by a drug-

detecting canine generally involves far less an intrusion than any other type of search technique and is uniquely selective, detecting in most cases only the presence of the particular type of contraband that the dog is trained to recognize. Accordingly, we hold that, given the greater protection afforded individual privacy under Montana's Constitution, the balance between governmental interests and individual interests in this case can best be struck by requiring particularized suspicion as a prerequisite for the use of a drug-detecting canine.

¶30     Our holding here is, moreover, in line with one of our previous cases in which we determined that, under limited circumstances, the particularized suspicion standard properly balances individual privacy and government law enforcement interests. *Hulse v. Department of Justice*, 1998 MT 108, ¶ 38, 289 Mont. 1, ¶ 38, 961 P.2d 75, ¶ 38 (particularized suspicion required for the use of field sobriety tests). However, we also make clear that the holding in this case is limited to the use of drug-detecting canines during police investigations. Accordingly, our conclusion here does not disturb the holdings of any past cases regarding the human detection of the odor of drugs. *See generally State v. Schoendaller* (1978), 176 Mont. 376, 382, 578 P.2d 730, 734 (odor of drugs emanating from car window not sufficient for probable cause to search a vehicle); *but cf. State v. Means* (1978), 177 Mont. 193, 199, 581 P.2d 406, 409 (odor of drugs emanating from house can be considered as one factor contributing to probable cause).

¶31     Accordingly, we hold that when a person maintains control of a container in which he has a reasonable expectation of privacy, but where the odors from that container are freely

14

exposed to the public, particularized suspicion is required for the use of a canine to detect those odors. Therefore, based on this conclusion, we hold that particularized suspicion was required before the officers could use Dantz to conduct a sniff search of the exterior of Tackitt's vehicle.

¶32 **2. Did the District Court properly conclude that if the use of a drug-detecting canine is a search, the State had particularized suspicion to conduct the investigatory search of Tackitt's vehicle?**

¶33 We now address the question of whether Dantz's sniff of the exterior of Tackitt's vehicle was supported by particularized suspicion. The District Court concluded that all the other information in the warrant would have served as proper particularized suspicion for the canine sniff. Specifically, the court stated that the anonymous tip was sufficiently corroborated by the other information in the warrant. We disagree.

¶34 In this case the tip that served as the impetus of the warrant was anonymous. The parties agree that we have always required an anonymous tip be corroborated to establish particularized suspicion. *Reesman, ¶* 28. However, corroboration must consist of more than merely innocent, public information. *State v. Griggs*, 2001 MT 211, ¶ 50, 306 Mont. 366, ¶ 50, 34 P.3d 101, ¶ 50. We appreciate that *Reesman* and *Griggs* address the sufficiency of corroboration of an anonymous tip in the context of our review of a search warrant for probable cause, as opposed to an analysis of particularized suspicion. However, the corroboration requirement in both instances must be the same. *State v. Anderson* (1993), 258 Mont. 510, 516, 853 P.2d 1245, 1249. Particularized suspicion must be based on objective data from which an experienced police officer can make the inference that a person is

15

engaged in wrongdoing. *Elison*, ¶ 15. An anonymous tip lacking appropriate corroboration simply cannot qualify as "objective data" sufficient to support particularized suspicion, any more than it can support probable cause.

¶35 Here, the independent police investigation of Tackitt only corroborated innocent, public information such as where Tackitt lived and what cars he drove. Therefore, the corroboration of the tip rests on three things: the confidential reliable informant who no one can identify, Tackitt's past conviction for possession of paraphernalia, and the Task Force records regarding Tackitt's past alleged drug dealing.

¶36 Tackitt asserts that two of these pieces of information cannot be considered as a matter of law. First, Tackitt argues the corroboration from the confidential informant must be excluded because it was revealed during the suppression hearing that the involved officers could not remember who the informant was, nor could they find a record of the identity of the informant. Therefore, Tackitt asserts there is no way to verify the informant's reliability. Next, Tackitt asserts that the ten year old information from the Task Force records is stale. In its brief on appeal, the State fails to respond to Tackitt's argument regarding the confidential reliable informant that no one could identify. On the issue of Tackitt's past alleged activities, the State asserts that because the past information and the current charge allegedly involve ongoing activity, the previous Task Force records can properly be considered towards particularized suspicion. We agree with Tackitt.

¶37 As to the first issue, there can be no corroboration by a confidential reliable informant under circumstances where no one can even recall the identity of the informant. We were

16

faced with a similar situation in *Reesman* in that there, the police attempted to corroborate an informant with information from an anonymous citizen who supposedly provided reliable information in the past. *Reesman*, ¶ 46. We stated that an anonymous informant could not logically serve as corroboration for an untested informant. *Reesman*, ¶ 46. Similarly, the anonymous informant in this case cannot be corroborated by a confidential informant who is, for all intents and purposes, anonymous because no one can identify him or her. For all we know, the two informants may have been the same person.

¶38 Furthermore, failing to remember the identity of the reliable confidential informant is a "problem [that] simply does not have to exist at all." *State v. Worrall*, 1999 MT 55, ¶¶ 51-53, 293 Mont. 439, ¶¶ 51-53, 976 P.2d 968, ¶¶ 51-53. As we held in *Worrall*, when the ability to properly preserve necessary information is easily within reach of the police, we cannot give them the benefit of the doubt where a defendant's constitutional rights are concerned. *Worrall*, ¶¶ 54-55. Therefore, any corroboration from the mystery confidential reliable informant is insufficient for particularized suspicion here.

¶39 Tackitt next asserts that the information from the ten year old Task Force records is stale and cannot be considered. Again, we agree. We have addressed the issue of staleness many times. The general rule is that the determination of staleness depends on the nature of the property and activity in issue. *State v. Walston* (1989), 236 Mont. 218, 223, 768 P.2d 1387, 1390. Further, when criminal activity is "continuing in nature" more time may elapse before the information becomes stale. *State v. Sarbaum* (1995), 270 Mont. 176, 185, 890 P.2d 1284, 1290.

17

¶40     In *State v. Valley* (1992), 252 Mont. 489, 493, 830 P.2d 1255, 1258, we excised stale information that was the sole corroboration of an anonymous tip because it was eleven months to seven years old and because it did not contain any "indication that contraband or evidence would presently be at the place to be searched." Likewise, in this case, the information from the Task Force records was in no way tied to the current tip by activity during the intervening seven to ten years. Therefore, the information was stale because it did not evidence activity that was continuing in nature. Therefore, this information also cannot be considered.

¶41     Excluding both these pieces of information removes all corroboration of the anonymous informant except Tackitt's misdemeanor conviction and the fact that Corporal Meehan confirmed the real property and vehicles that Tackitt owns. As mentioned, innocent, public information that anyone could discover cannot serve as corroboration of the criminal activity alleged by the anonymous informant. Further, a seven year old misdemeanor citation for possession of marijuana paraphernalia does not serve as sufficient corroboration for particularized suspicion here because it in no way corroborates the extensive drug trafficking implicated by the tip. Therefore, the officers did not have sufficient particularized suspicion to use Dantz to sniff the exterior of Tackitt's vehicle. Consequently, without the fact that Dantz alerted to the vehicle, the warrant to search Tackitt's residence and vehicle was not supported by probable cause and must fail. Therefore, the District Court erred in denying Tackitt's motion to suppress.

¶42     Finally, we note that Tackitt asserts on appeal that the warrant application did not

18

contain sufficient information regarding Dantz's reliability and also asserts that the warrant granted was over-broad in scope. Because our resolution of the issues above regarding Tackitt's privacy rights and the need for particularized suspicion to use drug-detecting canines, we need not reach the additional issues raised Tackitt.

## IV. CONCLUSION

¶43 Because the District Court improperly concluded that there was particularized suspicion for the use of a drug-detecting canine to survey the exterior of Tackitt's vehicle, and because the application for the search warrant otherwise failed to establish probable cause for the issuance of the search warrant, we hold that the trial court erred in denying Tackitt's motion to suppress evidence.

¶44 Tackitt's conviction is reversed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER


Justice Jim Rice, specially concurring.

¶45 I concur with the holding of the Court, but not in the entirety of the rationale employed.

21

¶46    The Court holds that there is a reasonable expectation of privacy to "anything stored" in the trunk of a vehicle, and, without saying, necessarily also holds that this expectation of privacy extends to any contraband stored therein, and the odors which emanate therefrom. While I agree that there is a reasonable expectation of privacy in the trunk of one's vehicle, I disagree that such expectation has a blanket effect which extends to contraband and its odors, and am confident that society does not recognize the same as objectively reasonable. Although the privacy interest in a trunk makes a physical intrusion therein by law enforcement a search which must be supported by probable cause, that same protection does not attach to drug odors which escape from the trunk and enter public places, where they can be detected by a trained dog. That is not to say that law enforcement may conduct dog sniffs in public places at random and without justification, as there may be privacy interests, not at issue in this case, which extend to public places. I simply disagree with the proposition that contraband odors which emanate into public places from within a closed trunk are shrouded with a privacy protection that would apply in all cases, regardless of the facts.

¶47    Such a view regarding air molecules which have escaped to the public domain has been adopted by various courts, including those who have analyzed the issue on the basis of state constitutional privacy protections. For example, in *State v. Smith* (Or.1998), 963 P.2d 642, the Oregon Supreme Court considered whether a dog sniff to detect the presence of drug odors outside a storage unit, which it defined as a "clearly defined, private space," was a search, and concluded that "[t]he clear import . . . is that, at least when they are conducted in a public place, dog sniffs are not searches. And, because they are not, the protections of

22

Article I, section 9–including the warrant requirement–do not apply." *Smith*, 963 P.2d at 647.

¶48    However, I do not believe that the sniff here occurred in a public place, as the Court surmises. Tackitt's vehicle was sitting off the public access road in an area immediately adjacent to his mobile home, which sat in a mobile home park with many other homes. Tackitt was afforded the right to use the parking space exclusively, and did so, excluding other residents from the space. Although the District Court did not discuss the evidence introduced regarding Tackitt's exclusive right to use the parking space, noting only that the space was "in an open location and accessible to view by anyone" and "was adjacent to and accessible from the roadway," the District Court did find that when Tackitt's vehicle was sniffed, it was "parked in the parking area at" 101 Ridgewood Terrace Drive, Tackitt's address. Thus, the parking area was a kind of "driveway" for Tackitt's home. Although this driveway was not as clearly defined as other driveways may be, and could be easily accessed from the public road within the mobile home park, I believe that society recognizes as objectively reasonable that an expectation of privacy would attach to such property. Therefore, Tackitt reasonably held such an expectation, and could assume that while his vehicle was parked there, it would not be intruded upon without proper justification.

¶49    After comparing the nature of this privacy interest with the minimal intrusive nature and the limited information pertaining only to contraband that is revealed by a dog sniff ("[T]he canine sniff is *sui generis*. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the

23

information revealed by the procedure." *United States v. Place* (1983), 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45, 77 L.Ed.2d 110, 121), I concur that law enforcement needed only particularized suspicion to conduct the sniff of the exterior of Tackitt's vehicle on this property. Further, the Court has correctly concluded that the evidence here was insufficient to constitute particularized suspicion, given the lack of identity or any information whatsoever about the informant, and the failure of law enforcement's corroborative effort to reveal any information that would make the report of criminal wrongdoing more probable. The absence of information here stands in instructive contrast to the substantial evidence collected by law enforcement in a recent case involving particularized suspicion. See *State v. Martinez,* 2003 MT 65, 314 Mont. 434, ___ P.3d ___ (Rice, J., dissenting). I thus join the Court in reversing the District Court.

/S/ JIM RICE