No. 00-357

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 196

GARY GRINDELAND,

Petitioner and Respondent,

v.

STATE OF MONTANA,

Respondent and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brant Light, Cascade County Attorney; Marvin Anderson,

Deputy County Attorney, Great Falls, Montana

For Respondent:

Channing Hartelius, Attorney at Law, Great Falls, Montana

Submitted on Briefs: February 8, 2001
Decided: September 25, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court

¶1 The State of Montana (State) appeals from the judgment entered by the Eighth Judicial District Court, Cascade County, on its findings of fact, conclusions of law and order granting the petition filed by Gary Grindeland (Grindeland) requesting reinstatement of his driver's license. We affirm.

¶2 The issue on appeal is whether the District Court erred in granting Grindeland's petition to reinstate his driver's license.

## BACKGROUND

¶3 On the evening of November 23, 1999, Cascade County Deputy Sheriff Scott Van Dyken (Van Dyken) was patrolling in the area of Great Falls, Montana, when he received information of an anonymous citizen complaint regarding a careless driver. Van Dyken proceeded to the location specified in the complaint and, while he observed a vehicle matching the reported description in the parking lot of a fast food restaurant, he did not immediately observe any activity which in his opinion would justify an investigative stop of the vehicle. Van Dyken drove around the block, approached the restaurant again, saw the vehicle exit the parking lot and began to follow it. Eventually, the deputy observed the vehicle make a right-hand turn at an intersection without using a turn signal and he then initiated a traffic stop. He observed no other improper driving maneuvers prior to the stop.

¶4 The traffic stop culminated in Van Dyken arresting the driver, identified as Grindeland, for driving under the influence of alcohol. The deputy transported Grindeland to the Cascade County Sheriff's Office and requested him to submit a breath sample. Grindeland refused and, as a result, his driver's license was seized and his driving privileges suspended pursuant to §§ 61-8-402(4) and -402(6), MCA.

¶5 Grindeland subsequently petitioned the District Court to reinstate his driving privileges, arguing that the traffic stop which resulted in his arrest was illegal. He contended he was not required to use a turn signal when he made the right-hand turn and, therefore, Van Dyken could not have had a particularized suspicion that Grindeland had committed a traffic offense. Following a hearing on the petition, the District Court concluded

Grindeland did not violate the law by failing to signal his turn and, as a result, Van Dyken's traffic stop was not supported by a particularized suspicion that an offense had occurred. Based on these conclusions, the court granted Grindeland's petition and reinstated his driving privileges. The State appeals.

## STANDARD OF REVIEW

¶6 Our review of a district court's ruling on a petition to reinstate a driver's license is twofold. We review the court's findings of fact to determine whether they are clearly erroneous and we review its conclusions of law to determine whether they are correct. Williams v. State, 1999 MT 5, ¶ 9, 293 Mont. 36, ¶ 9, 973 P.2d 218, ¶ 9.

## DISCUSSION

¶7 Did the District Court err in granting Grindeland's petition to reinstate his driver's license?

¶8 Grindeland brought his petition to reinstate his driver's license pursuant to § 61-8-403, MCA. That statute limits the District Court's review of Grindeland's petition to whether Van Dyken had reasonable grounds to believe Grindeland had been driving or was in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol; Grindeland was placed under arrest; and he refused to submit to one or more tests designated by Van Dyken. Section 61-8-403(4)(a), MCA.

¶9 Grindeland conceded in the District Court that he refused to submit to the breath test requested by Van Dyken. He argued, however, that the deputy did not have reasonable grounds to believe he was driving under the influence of alcohol and, as a result, his arrest was illegal. More specifically, he contended Van Dyken's traffic stop was not supported by a particularized suspicion that Grindeland had committed an offense because his failure to use a turn signal did not violate the law. He further contended Van Dyken's determination that Grindeland was driving under the influence of alcohol was based on evidence gained subsequent to the traffic stop, as the deputy had observed no indication prior to the stop that Grindeland may have been intoxicated. Thus, according to Grindeland, absent the evidence gained from the illegal traffic stop, Van Dyken did not have reasonable grounds to believe Grindeland was driving under the influence of alcohol. The District Court concluded that, under the circumstances, Grindeland was not required to signal his right-hand turn and, as a result, Van Dyken's traffic stop was not supported by

a particularized suspicion that Grindeland had committed an offense. Based on these conclusions, the court further concluded that Van Dyken did not have reasonable grounds to believe Grindeland was driving under the influence of alcohol and granted the petition. The State asserts that the District Court's conclusion that Van Dyken did not have a particularized suspicion that Grindeland had committed an offense is erroneous.

¶10 The "reasonable grounds" standard for making an investigative stop under § 61-8-403 (4)(a)(i), MCA, is the effective equivalent of the "particularized suspicion" test for an investigative stop under § 46-5-401, MCA. Anderson v. State Dept. of Justice (1996), 275 Mont. 259, 263, 912 P.2d 212, 214 (citation omitted). An investigative stop must be justified by some objective manifestation that the person stopped has committed, is committing or is about to commit a criminal offense. Anderson, 275 Mont. at 263, 912 P.2d at 214. Thus, we apply a two-part test to determine whether a law enforcement officer had sufficient particularized suspicion to justify an investigative stop. First, the state is required to show objective data from which an experienced officer could make certain inferences. Second, the state must show a resulting suspicion that the occupant of the vehicle in question is or has been engaged in some wrongdoing. Anderson, 275 Mont. at 263, 912 P.2d at 214. Whether a particularized suspicion exists is a question of fact determined by examining the totality of the circumstances surrounding the investigative stop. Anderson, 275 Mont. at 263, 912 P.2d at 214.

¶11 Here, Van Dyken initiated an investigative stop of Grindeland's vehicle based on a belief that Grindeland had committed an offense by failing to use his turn signal in violation of § 61-8-336, MCA. That statute provides that a person shall not turn a vehicle "without giving an appropriate signal . . . in the event any other traffic may be affected by such movement." Section 61-8-336(1), MCA. In other words, a driver is only required to use a turn signal when there is other traffic which may be affected by the turn.

¶12 Van Dyken testified at the hearing on Grindeland's petition that other vehicles were in the vicinity at the time Grindeland approached the intersection and made his turn. The State argues that the presence of other vehicles in the vicinity necessarily means those vehicles may have been affected by Grindeland's turn and supports Van Dyken's determination that he had a reasonable suspicion Grindeland committed an offense by failing to signal his turn, thereby justifying the investigative stop. On this record, we disagree.

¶13 Although Van Dyken testified he noticed other vehicles in the vicinity, he could not

recall the location of those vehicles in relation to the intersection and Grindeland's vehicle. He further testified it was possible the vehicles already had passed Grindeland by the time he made his turn. Absent knowledge of the location of the vehicles, Van Dyken could not reasonably have determined that they may have been affected by Grindeland's turn. In other words, Van Dyken had insufficient objective data by which to infer that other vehicles may have been affected by Grindeland's turn.

¶14 We conclude Van Dyken did not have sufficient particularized suspicion to justify an investigative stop of Grindeland's vehicle and, as a result, the District Court's conclusion in that regard is correct. We hold, therefore, that the District Court did not err in granting Grindeland's petition to reinstate his driver's license.

¶15 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ JIM REGNIER

Justice W. William Leaphart dissenting.

¶16 I dissent.

¶17 Officer Van Dyken initiated the investigative stop of Grindeland's vehicle based upon Grindeland's failure to use his right turn signal in violation of § 61-8-336, MCA. The statute requires that a person shall not turn a vehicle "without giving an appropriate signal . . . in the event any other traffic may be affected by such movement." This Court concludes that a driver is only required to use a turn signal when there is traffic which may, in fact, be affected by the turn. Van Dyken testified that there were other cars in the area at the time of the turn. However, he could not recall the location of those vehicles in

relation to the intersection where Grindeland was executing the turn. Accordingly, the Court reasons that Van Dyken could not have reasonably determined that they may have been affected by Grindeland's turn.

¶18 The Court's interpretation of the statute is unreasonable. Under the Court's interpretation, the State must show that a particular vehicle was, in fact, affected by the lack of a turn signal. This burden will require one of two things: (1) that the officer, instead of focusing his/her attention on the suspected driver, chase down other vehicles to ascertain whether they were affected by the suspect's lack of a right hand turn signal, or (2) that the officer make some arbitrary assumptions based on the relative location of the "other traffic": for example, that a vehicle approaching from the other direction will not be affected; that a vehicle approaching from the left might be affected or that a vehicle approaching from the right will not be affected. None of these assumptions are necessarily true. The officer cannot divine whether another vehicle was in fact affected unless he knows not only the location of the other vehicle but also what the other vehicle was going to do itself-turn, stop, continue forward, etc. That is an impossible burden. If there is traffic present at the time of the turn, the law, of necessity, assumes that that traffic may have been affected by the turn. The State should not be saddled with the impossible burden of showing that the other traffic was in fact affected.

¶19 I would reverse the decision of the District Court.

/S/ W. WILLIAM LEAPHART