No. 04-800

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 210

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

ROBERT LOUIS MEZA,

        Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DC 01-681
The Honorable Russell C. Fagg, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Jeffrey G. Michael, Attorney at Law, Billings, Montana

      For Respondent:

          Hon. Mike McGrath, Attorney General; Joslyn Hunt, Assistant Attorney
General, Helena, Montana

          Dennis Paxinos, County Attorney; Sheila Kolar, Deputy County Attorney,
Billings, Montana

_____

          Submitted on Briefs: June 28, 2006

             Decided: August 29, 2006

Filed:

_____
               Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Robert Louis Meza (Meza) appeals from his conviction in the Thirteenth Judicial District, Yellowstone County, for criminal possession of dangerous drugs.  We affirm.

¶2     We review the following issues on appeal:

¶3     Whether the District Court properly determined that a particularized suspicion supported the stop of Meza's vehicle.

¶4     Whether the District Court properly determined that a particularized suspicion of narcotics activity existed to extend the scope of the stop to allow a drug-detecting canine to sniff for drugs in Meza's vehicle.

¶5     Whether Meza received the effective assistance of counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

¶6     Billings police officer and canine handler Steve Feuerstein (Officer Feuerstein) noticed a pickup truck illegally parked in the middle of a side street as he drove past during routine patrol on August 19, 2001.  Officer Feuerstein circled around the block and came up behind the vehicle.  He observed Meza in the driver's seat of the truck, speaking with a man leaning through the passenger window.  Officer Feuerstein noted that the truck was parked in front of a residence known for its involvement with narcotics and obtained the license plate number.  Officer Feuerstein continued past the truck, driving into the oncoming traffic lane to avoid Meza's illegally parked vehicle.

¶7     Officer Feuerstein suspected narcotics activity.  He circled the block a second time and noticed that the truck had just left the house. Officer Feuerstein accelerated to catch the vehicle and as he approached, the truck turned at an intersection without signaling.

The truck then pulled over to the side of the road. Meza immediately stepped out of the vehicle after stopping.

¶8 Officer Feuerstein approached and requested Meza's driver's license and registration. He observed that Meza acted "very nervous." Officer Feuerstein walked back to his patrol car to process Meza's driving information. At that time, dispatch advised Officer Feuerstein that Meza had a history of using narcotics. Officer Feuerstein issued Meza two traffic citations, one for impeding traffic under § 61-8-311, MCA, and one failing to use a turn signal under § 61-8-336, MCA.

¶9 Officer Feuerstein advised Meza that he suspected Meza of involvement with narcotics and asked for consent to search the truck. Meza declined and Officer Feuerstein told Meza that he would have his canine check Meza's vehicle for odors. Officer Feuerstein removed his canine from the patrol car and walked the dog around Meza's truck. The canine signaled the presence of drugs in Meza's vehicle by scratching the driver's side door and barking. Officer Feuerstein advised Meza that he would seek a warrant to search the truck, but that Meza was free to leave without his vehicle.

¶10 Meza left without his truck and Officer Feuerstein began to file for a telephonic search warrant to search the vehicle. Dispatch then advised Officer Feuerstein that Meza was on parole. Officer Feuerstein contacted Meza's parole officer, Officer Steven Hurd (Officer Hurd), and explained the situation. Officer Hurd gave Officer Feuerstein consent to conduct a parole search of Meza's truck. Officer Feuerstein searched Meza's truck and discovered methamphetamines.

¶11 The State charged Meza with criminal possession of dangerous drugs pursuant to §

3

45-9-102, MCA, on September 5, 2001. The State gave notice that it intended to pursue Meza as a persistent felony offender under § 46-18-501, MCA.

¶12 Meza filed a motion to suppress evidence found during the search of his truck. Meza contended that Officer Feuerstein lacked the particularized suspicion to stop Meza. Meza asserted that he did not commit any traffic violations because no traffic was affected by his failure to use a turn signal or parking in the middle of the road. The State responded that traffic need not be impeded to cause a violation by parking in the street and that Meza's failure to signal did impede traffic. The District Court denied Meza's motion to suppress on January 24, 2002.

¶13 The District Court appointed new counsel for Meza. Meza filed a second motion to suppress evidence on May 14, 2002. Meza's counsel chose not to challenge the validity of the parole search, stating that parole searches are "basically always allowed." Meza's counsel argued instead that Officer Feuerstein's use of a canine to sniff his truck represented an improper search. The State responded that according to *State v. Scheetz*, 286 Mont. 41, 950 P.2d 722 (1997), a canine sniff did not constitute a search. The District Court denied Meza's motion on September 9, 2002.

¶14 The court again appointed Meza new counsel and Meza filed a motion to reconsider the denial of his second motion to suppress on August 18, 2003, following this Court's decision in *State v. Tackitt*, 2003 MT 81, 315 Mont. 59, 67 P.3d 295. Meza contended that no particularized suspicion supported the canine sniff of his vehicle. The State asserted that Meza's illegal parking in front of a known narcotics house, his interaction with a person in front of the house, Meza's history of drug use, Meza's failure

4

to signal, nervous behavior after being stopped, and the fact that Meza did not want to remain in his truck, created a particularized suspicion to conduct a canine sniff of his vehicle. The District Court denied Meza's motion to reconsider on October 23, 2003.

¶15 Meza entered a plea of guilty on June 29, 2004, but reserved the right to appeal the denial of his motion to suppress. The District Court sentenced Meza as a persistent felony offender to a term of ten years at the Montana State Prison with five suspended, to run consecutively with a sentence imposed for a separate crime. This appeal followed.

## STANDARD OF REVIEW

¶16 This Court reviews a district court's grant or denial of a motion to suppress to determine whether the court's findings of fact were clearly erroneous and whether its conclusions of law were correct. *State v. Carlson*, 2000 MT 320, ¶ 14, 302 Mont. 508, ¶ 14, 15 P.3d 893, ¶ 14. Claims of ineffective assistance of counsel present mixed questions of law and fact that we review de novo. *State v. Novak*, 2005 MT 294, ¶ 15, 329 Mont. 309, ¶ 15, 124 P.3d 182, ¶ 15.

## DISCUSSION

¶17 **Whether the District Court properly determined that a particularized suspicion supported the stop of Meza's vehicle.**

¶18 A police officer may stop any vehicle that he or she observes in circumstances that create a particularized suspicion that the "occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401, MCA. We apply a two-part test to determine whether a law enforcement officer had sufficient particularized suspicion to justify an investigative stop. *State v. Britt,* 2005 MT 101, ¶ 8, 327 Mont. 1, ¶

8, 111 P.3d 217, ¶ 8. First, the State must demonstrate objective data from which an experienced officer could make certain inferences. *Britt,* ¶ 8. Second, the State must show a resulting suspicion by the officer that the occupant of the vehicle is or has been engaged in some wrongdoing. *Britt*, ¶ 8.

¶19 Meza contends that pursuant to this Court's decision in *Grindeland v. State*, 2001 MT 196, 306 Mont. 262, 32 P.3d 767, the State must demonstrate that Meza's failure to use a turn signal affected traffic in order to constitute a violation. In *Grindeland*, we addressed the language of § 61-8-336, MCA (2001), which stated that no person may turn a vehicle without a signal, "in the event any other traffic may be affected by such movement." We determined that § 61-8-336, MCA, required that traffic be affected by a driver's failure to use a turn signal in order for particularized suspicion to exist to stop a vehicle. *Grindeland*, ¶ 11.

¶20 Meza fails to recognize that the Legislature amended § 61-8-336, MCA, in 2003 and removed the language relied upon in *Grindeland*. 2003 Mont. Laws Ch. 352. The statute now reads that "[a] person may not turn a vehicle without giving an appropriate signal in the manner provided in this section." Section 61-8-336(1), MCA. Section 61-8-336, MCA, no longer requires that traffic be affected in order for a violation to occur for failure to use a signal. *See* § 61-8-336, MCA. As a consequence, Meza violated § 61-8-336(2), MCA, by not signaling for at least 100 feet before turning in a residential district.

¶21 Furthermore, Meza committed a separate traffic violation by parking in the middle of the street. We need not address the question of whether traffic actually must be impeded to constitute a violation, however, because Meza violated § 61-8-311, MCA, in

either case by actually impeding traffic by causing Officer Feuerstein to drive around his vehicle. The District Court properly determined that particularized suspicion existed to stop Meza's vehicle when he committed two traffic violations.

¶22 **Whether the District Court properly determined that a particularized suspicion of narcotics activity existed to extend the scope of the stop to allow a drug-detecting canine to sniff for drugs in Meza's vehicle.**

¶23 We have held that a canine sniff of a vehicle constitutes a search under Article II, Sections 10 and 11 of the Montana Constitution. *Tackitt*, ¶ 22. Due to the limited nature of the intrusion of a dog sniff, however, we do not require police officers to obtain a warrant. A police officer must only demonstrate a particularized suspicion for the use of a drug-detecting canine. *Tackitt*, ¶ 31.

¶24 Meza contends that Officer Feuerstein improperly extended the initial traffic stop to conduct a canine sniff of his vehicle. A traffic stop may be prolonged and the scope of the investigation enlarged as the circumstances require, as long as the scope of the investigation remains within the limits created by the facts and the suspicions which they arouse. *Hulse v. State Dept. of Justice*, 1998 MT 108, ¶ 40, 289 Mont. 1, ¶ 40, 961 P.2d 75, ¶ 40. Meza asserts that the circumstances did not justify a canine sniff of his truck because there was no particularized suspicion of narcotics activity.

¶25 Meza ignores the probative value of his conduct after the stop and the information provided by dispatch regarding Meza's narcotics history. Meza jumped out of his truck after being pulled over. Officer Feuerstein testified that Meza acted nervously during the initial interaction and that Meza did not want to get back in the truck. Officer Feuerstein

7

also encountered Meza illegally parked outside a house that Officer Feuerstein knew had past narcotics operations. Dispatch also had advised Officer Feuerstein that Meza had a history of narcotics use.

¶26 Whether a particularized suspicion exists represents a question of fact determined by examining the totality of circumstances surrounding the investigation stop. *Britt,* ¶ 8. Meza's behavior after being stopped and his narcotics history support a finding of a particularized suspicion when considered in conjunction with the information that he stopped in the street to have a brief meeting with a person in front of a known narcotics house. *See Hulse*, ¶ 40. The District Court properly determined that particularized suspicion existed to conduct a canine sniff of Meza's truck.

¶27 **Whether Meza received the effective assistance of counsel.**

¶28 Article II, Section 24 of the Montana Constitution and the Sixth Amendment guarantee a person the right to the effective assistance of counsel. This Court has adopted the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), to evaluate claims of ineffective assistance of counsel. The defendant must demonstrate that his counsel's performance (1) fell below the range of competence required of attorneys in criminal cases and (2) that his counsel's deficient performance prejudiced his case. *State v. Hendricks*, 2003 MT 223, ¶ 6, 317 Mont. 177, ¶ 6, 75 P.3d 1268, ¶ 6. The first prong carries a strong presumption in favor of the State, as counsel possesses wide latitude in determining what tactics to employ when defending a client. *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, ¶ 11, 97 P.3d 1095, ¶ 11. The defendant bears the burden to show that his counsel's performance fell below an objective standard

8

of reasonableness. *State v. Grixti*, 2005 MT 296, ¶ 25, 329 Mont. 330, ¶ 25, 124 P.3d 177, ¶ 25.

¶29 Meza asserts that his counsel's failure to challenge the validity of the parole search of his truck represented ineffective assistance of counsel. Meza's counsel at the time of the second suppression hearing opted not to challenge the validity of the parole search of his truck because parole and probationary searches are "basically always allowed." Meza contends that the failure of his counsel to challenge the validity of the parole search fell below the range of competence required by attorneys in criminal cases. We disagree.

¶30 As a general matter, searches of parolees conducted by police officers are permissible with the consent of the parole officer. *See State v. Boston*, 269 Mont. 300, 305, 889 P.2d 814, 817 (1994); *See also State v. Burke*, 235 Mont. 165, 766 P.2d 254 (1988); *State v. Burchett*, 277 Mont. 192, 921 P.2d 854 (1996). The record reveals that Meza's counsel considered that a challenge to the validity of the parole search would be unlikely to succeed. Meza's counsel opted instead to challenge the validity of this particular parole search on the grounds that Officer Feuerstein lacked the particularized suspicion of narcotics activity to extend the scope of the stop. Given the strong precedents supporting the validity of parole and probationary searches, Meza fails to demonstrate that his counsel's conduct fell below an objective standard of reasonableness. *See Grixti*, ¶ 25.

¶31 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JOHN WARNER