**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

FRANCISCO BURCIAGA,

    Defendant-Appellee.

No. 11-2109

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 1:08-CR-01541-MV-1)**

---

Joshua S. Johnson, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C. (Lanny A. Breur, Assistant Attorney General, Gregory D. Andres, Acting Deputy Assistant Attorney General, and Richard A. Friedman, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C., and Kenneth J. Gonzales, United States Attorney, and C. Paige Messec and Jon K. Stanford, Assistant United States Attorneys, Albuquerque, New Mexico, with him on the brief) for Plaintiff-Appellant.

Teresa M. Duncan, Freedman Boyd Hollander Goldberg Ives & Duncan, Albuquerque, New Mexico, for Defendant-Appellee.

---

Before **BRISCOE**, Chief Judge, and **BALDOCK** and **TYMKOVICH**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

Where "other traffic may be affected," § 66-7-325 of the New Mexico Statutes requires a motorist changing traffic lanes to signal "continuously during not less than the last one hundred feet traveled by the vehicle" before the change. N.M. Stat. Ann. § 66-7-325(A) & (B). The New Mexico Supreme Court has construed § 66-7-325 to require "a signal even when there is only a reasonable possibility that other traffic may be affected by the signaling driver's movement." State v. Hubble, 206 P.3d 579, 584 (N.M. 2009). The broader question in this case is whether a New Mexico highway patrol officer lawfully stopped Defendant Francisco Burciaga's vehicle based on a suspected violation of § 66-7-325, where Defendant, without timely engaging his directional signal, changed from the left to the right lane on the interstate after passing the officer's patrol car. The district court held the stop violated Defendant's Fourth Amendment right to be free from unreasonable seizures because the officer's testimony failed to establish that traffic "could have been affected" by Defendant's lane change absent facts not in evidence. United States v. Burciaga, No. 08-CR-1541-MV, Order at 18 (D.N.M., filed May 2, 2011) (unpublished) (hereinafter Burciaga). Consequently, the court granted Defendant's motion to suppress over 17 kilograms of heroin recovered as a result of the stop. The Government appeals pursuant to 18 U.S.C. § 3731. Our review of a motion to suppress based on a claimed Fourth Amendment violation is two-tiered: Considering the evidence in a light most favorable to the prevailing party, we first review the district court's factual findings only for clear error; we then review the court's

2

determination of reasonableness de novo. See United States v. McGehee, 672 F.3d 860, 866 (10th Cir. 2012). Mindful of these standards, we hold § 66-7-325 as applied to the facts provided the officer with an objectively justifiable basis for stopping Defendant's vehicle. Accordingly, we reverse.

I.

The Government bore the burden before the district court of establishing by a preponderance of the evidence that reasonable suspicion supported the officer's stop of Defendant's vehicle. See United States v. Kitchell, 653 F.3d 1206, 1216 (10th Cir. 2011). Consistent with the district court's factual recitation, the record reflects that on June 24, 2008 around 6:00 a.m., New Mexico highway patrol officer John Valdez was patrolling the two northbound lanes of I-25 near Raton, New Mexico. Relevant to our inquiry, Officer Valdez was traveling north in a 75-mph zone when he engaged his emergency lights and pulled onto the right shoulder to check on a maintenance truck moving so slowly that initially it appeared to be stopped. Once Officer Valdez saw the truck was moving, he disengaged his lights and merged back into the right lane of the interstate. At that point, Defendant, traveling in the left lane at a speed of around 75-mph, passed Officer Valdez, as well as the maintenance truck. A semi truck traveled some distance behind. Once "a little ways in front" of Officer Valdez, Defendant signaled his intention to merge back into the right lane simultaneous with the move. Appellant's App'x at 111. Officer Valdez stopped Defendant and ticketed him for failing to timely signal in

3

violation of N.M. Stat. Ann. § 66-7-325:

> A.  No person shall . . . turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.  No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.
>
> B.  A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

N.M. Stat. Ann. § 66-7-325(A) & (B).[1]  Defendant subsequently consented to the search of his vehicle that uncovered the heroin.  A federal grand jury indicted Defendant on one count of possession with intent to distribute over 1000 grams of heroin in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A).

At the suppression hearing, the Government asked Officer Valdez whether the traffic in the vicinity of Defendant's lane change "could have been affected by his improper signal."  Appellant's App'x at 101.  Valdez answered yes as part of the following exchange:

> A.    [S]ignaling properly alerts other drivers of your intentions to change lanes.  Other drivers make . . . their decisions based on what your signal is going to be. . . . [I]f you don't give your 100 feet of signal, the other drivers have no idea that you're actually intending on changing lanes.
> Q.    What's the speed limit on that section of highway?

---

[1]  Defendant concedes in footnote 12 of his appellate brief that the entirety of § 66-7-325 applies to traffic lane changes as well as direct turns.  See Burciaga at 8-9 ("[T]o give effect to the intent of the New Mexico legislature, only one reading of the statute is plausible.  The general policy concerns behind requiring turn signals support a conclusion that 'shall so turn' includes lane changes.").

4

A.    It's 75.

Q.    [I]s . . . the safety of that failure to signal affected by the speed?

A.    Yes.  At that speed, in one second, you'll approximately travel about 110 feet.

Q.    [W]as [Defendant's] lane change made with reasonable safety?

A.    In my opinion, no, because he did not give the 100 feet of signal before changing lanes.

Q.    Was speed also a factor in that?

A.    The speed is also a factor, and the fact that there was other traffic in the area that would have been affected.

Id. at 101–02.  Defense counsel asked Officer Valdez whether a "perceptible effect on the traffic" resulted from Defendant's failure to signal when he changed lanes. Id. at 106.  Valdez did not believe so, but said he could not testify as to the affect on the other drivers.  He added that "it was an unsafe behavior, to change lanes without signaling properly, and giving the [traffic] behind . . . or the traffic around . . . ample time to know of [Defendant's] intentions to change lanes."  Id. at 106–07.  Valdez further testified his own "ability to drive safely" was not affected by Defendant's lane change but "could have been if I was either going a little faster or if he was, in fact, a little closer . . . without giving enough of an alert."  Id. at 119, 136.

Based on Officer Valdez's testimony, the district court ruled the Government failed to prove the officer "had an objectively reasonable suspicion that any of the traffic in the vicinity 'may have been affected' by . . . Defendant's lane change[]." Burciaga at 12.  That is to say Valdez, according to the court, lacked "an objectively reasonable suspicion that Defendant violated the turn signal statute when he moved into the right lane in front of the officer's vehicle."  Id. at 17.

5

> Whereas the officer initially stated . . . that his own vehicle could have been affected by Defendant's lane change, he subsequently explained that his vehicle could have been so affected only if he had been in a different position on the road. . . .
>
> The New Mexico Supreme Court's language—requiring "a reasonable possibility that [other traffic] may have been affected," *Hubble*, 206 P.3d at 585—cannot be construed to mean that a violation occurs when, if the vehicles on the road at the time of the lane change were indeed in different positions on the roadway, they could have been affected.

Id. at 17–18 (brackets in original).

## II.

We have no difficulty in this case with the district court's recitation of the facts as reflected in the record. The only issue before us is whether Officer Valdez's stop of Defendant's vehicle was reasonable within the meaning of the Fourth Amendment. Because an objectively justifiable basis for a traffic stop necessarily renders that stop reasonable, the dispositive inquiry is whether N.M. Stat. Ann. § 66-7-325 provided Officer Valdez with such basis.[2] See United States v. DeGasso, 369 F.3d 1139, 1144–45 (10th Cir. 2004). To answer that question, we need look no further than the New Mexico Supreme Court's construction of the statute in Hubble, 206 P.3d 579. No federal or inferior state court "has any authority to place

---

[2] An objectively justifiable basis for a traffic stop exists where an officer observes a traffic violation or has a reasonable suspicion that such a violation has occurred or is occurring. "For reasonable suspicion to exist, an officer need not rule out the possibility of innocent conduct; he or she simply must possess some minimal level of objective justification for making the stop." United States v. Winder, 557 F.3d 1129, 1134 (10th Cir. 2009) (internal quotations omitted).

6

a construction on a state statute different from the one rendered by the highest court of the State." Johnson v. Fankell, 520 U.S. 911, 916 (1997). Accordingly, we rely on Hubble to construe § 66-7-325, before applying that construction to the facts presented.

A.

In Hubble, the New Mexico Supreme Court addressed the question of whether a county deputy had reasonable suspicion to stop defendant's vehicle based on a violation of § 66-7-325. The state supreme court set forth the following facts:

> Deputy Phillip Francisco was driving southbound on County Road 6100 when he observed [d]efendant's vehicle come to a stop at a "T" intersection between County Road 6100 and an unnamed access road. Aside from the vehicles belonging to Deputy Francisco and [d]efendant, there were no other vehicles on either the county road or the access road. As Deputy Francisco passed through the intersection, he observed that [d]efendant did not have his turn signal engaged. Deputy Francisco continued to observe the vehicle through his rearview mirror as he proceeded southbound and never saw the turn signal engaged. Deputy Francisco then observed [d]efendant turn onto County Road 6100 without using his turn signal. . . . Deputy Francisco then proceeded to make the traffic stop on the basis that [d]efendant turned without using his signal.

Hubble, 206 P.3d at 582. Based on these facts, the trial court denied the defendant's motion to suppress. The New Mexico Court of Appeals affirmed. In an unpublished opinion, the appellate court apparently decided defendant did not violate § 66-7-325 by failing to signal his intention to turn. Nonetheless the state appellate court held the deputy's stop of defendant's vehicle was not unreasonable under the circumstances because "no officer in the field can be expected to parse the

7

Legislature's language." Defendant's Petition for Writ of Certiorari, 2007 WL 6680370, at *7 (N.M., filed Sept. 24, 2007) (describing the intermediate appellate court's decision). The New Mexico Supreme Court disagreed, concluding defendant had indeed violated § 66-7-325 by failing to signal.

Unlike the state appellate court, the supreme court construed § 66-7-325(A)'s phrase "in the event any other traffic may be affected by such movement" to mean a driver must engage a turn signal "when there is a *reasonable possibility* that other traffic may be affected." Hubble, 206 P.3d at 584.

> The [c]ourt of [a]ppeals . . . unreasonably narrowed the reach of § 66-7-325(A) when it deviated from the language of the statute in its analysis. The first such deviation was when the [c]ourt articulated the issue that it would discuss: "we must decide whether Deputy Francisco *could have been affected* by [d]efendant's turn within the meaning of § 66-7-327(A)." Later, the [c]ourt reasoned "we do not understand how Deputy Francisco's operation of his vehicle *was affected* in any normal sense of this word by a right turn that occurred after he was well clear of the intersection." Finally the [c]ourt stated, "the State has not directed our attention to any evidence that Deputy Francisco believed that [d]efendant's right turn itself *presented a potential hazard* to him."

Id. at 585 (internal brackets and ellipses omitted). The supreme court explained the appellate court "required a greater show of effect [on other traffic] than the statute contemplates" Id. The State "was not required to prove that Deputy Francisco *could have* been affected, that he *was* affected, or that [d]efendant's turn *presented a potential hazard*; the statute only requires that the surrounding facts establish that there was a *reasonable possibility* that he may have been affected." Id.

8

The New Mexico Supreme Court described its interpretation of § 66-7-325 as consistent with the "policy and concerns . . . expressed in the New Mexico Driver Manual." Id. at 584.

> [T]he manual states: "Generally other drivers expect you to keep doing what you are doing. You *must* warn them when you are going to change direction or slow down. This will give them time to react *if needed*, or at least not be surprised by what you do." The manual further instructs drivers to signal when they change direction, turn right or left, merge into traffic, or park so that other drivers will have time to react to such movements.

Id. (quoting New Mexico Driver Manual 19 (2004)) (emphasis added). According to the state supreme court, the appellate court's reasoning "undermine[d] the policy behind driving safety by depriving non-signaling drivers of visual cues and ample decision-making time in their interactions with drivers who intend to change directions." Id. at 585.

B.

In addressing Defendant's motion to suppress, the district court framed the issue as "whether . . . the facts established at the evidentiary hearing would give rise to an officer's objectively reasonable suspicion that Defendant's failure to signal *could have affected* other traffic." Burciaga at 14 (emphasis added). The New Mexico Court of Appeals framed the issue in a similar fashion in Hubble when it asked whether the deputy "'*could have been affected* by [d]efendant's turn within the meaning of § 66-7-325(A).'" Hubble, 206 P.3d at 585. The New Mexico Supreme Court subsequently told us (and the appellate court) that the prosecution

9

"was *not* required to prove" traffic "*could have* been affected" in order to establish a violation of § 66-7-325 for failure to properly signal.  Id.  The court reasoned such inquiry "unreasonably narrowed the reach of § 66-7-325(A) and was not the equivalent of a "*reasonable possibility* that [traffic] may have been affected."  Id.  To be sure, Hubble is an exercise in semantics.  It plainly tells us, however, that by requiring the Government to prove traffic in the vicinity of Defendant's lane change, *i.e.*, the semi, the maintenance truck, and/or the officer's own patrol vehicle, "*could have* been affected," the district court "required a greater show of effect than [§ 66-7-325] contemplates."[3]  Id.

So what measure of proof is necessary to create an objectively justifiable belief that a driver has violated a statute requiring the timely use of a turn signal where a "reasonable possibility" exists that other traffic "'may be affected'"?  Id. at 584 (quoting N.M. Stat. Ann. § 66-7-325(A)) (emphasis omitted).  We do not go so far as to construe Hubble as requiring a driver in all instances to signal before a lane change.  Hubble suggests, in no uncertain terms however, that such measure is not extensive.  The New Mexico Supreme Court explained:  "[I]t is significant that the Legislature chose the phrase "may be affected" as opposed to "is affected," "will be affected," or "most likely will be affected."  Id.  "We understand this to mean that

_____

[3] In Hubble, the court conclusively established that the patrol vehicle involved in a § 66-7-325 stop is "traffic" within the meaning of the statute.  Hubble, 206 P.3d at 583.

10

the Legislature's intent was to provide § 66-7325(A) with a broad reach." Id. Illustrative of the statute's reach, the supreme court held defendant violated the turn signal statute despite the fact the deputy was not affected in any apparent fashion by defendant's right turn from a "T" intersection onto a county road, occurring "'after [the deputy] was well clear of the intersection.'" Id. at 585. The court based its holding upon the rationale that a driver intending to change course may affect not only other drivers' actions, *but their "decision-making processes in the time leading up to the movement*." Id. at 584 (emphasis added). This undoubtedly is because a driver intending to change lanes has no idea what is in the minds of nearby motorists. Only by properly signaling does a driver provide traffic "'time to react if needed.'" Id. "A driver, once given a visual cue that indicates another driver's intention, may decide to switch lanes, slow down, or prepare for a change in direction." Id.

Acknowledging but slighting Hubble's broad construction of N.M. Stat. Ann. § 66-7-325, the district court failed to account for the reasonable possibility that Defendant's failure to timely signal may have affected not only other driver's actions but their decision-making processes in the seconds preceding the lane change. Instead, the court focused its frustration on Officer Valdez's subjective opinions and beliefs about a rapidly developing scene, at one point even referring to his testimony as "difficult to make sense of." Burciaga at 12. In so focusing, the court parsed the facts too finely in its effort to ascertain whether Defendant's failure to timely signal his intention to change lanes *actually* affected other drivers. First, the court

11

concluded: "It is clear from Officer Valdez testimony that in his opinion, the water truck could *not* have been affected by Defendant's lane change." Burciaga at 16. Next, the court observed Officer Valdez could not testify as to the effect of Defendant's lane change on the semi because the officer "was unsure where the semi truck was in relation to Defendant's car during the . . . change." Id. at 17. Lastly, the court emphasized Officer Valdez stated he "could have been affected" only "if the vehicles on the road at the time of the lane change were . . . in different positions." Id. at 18.

But in this case, the Government did not even have to go so far as to establish that Defendant's lane change "most likely" would affect surrounding traffic. Hubble, 206 P.2d at 584. Rather the Government only had to prove a "reasonable possibility" existed that Defendant's lane change might do so. Id. The district court, as a result of its failure to heed the New Mexico Supreme Court's broad construction of § 66-7-325, "unreasonably narrowed the reach" of the statute, making it all but impossible for the Government to fit the evidence within its parameters. Id. at 585. For reasons Hubble explained, drivers on New Mexico roadways intending to change course must provide nearby motorists with "visual cues and ample decision-making time in their interactions" with traffic. Id. This is why the New Mexico Supreme Court decided that § 66-7-325 requires a driver sitting stationary at a "T" intersection providing county road access to signal an intention to turn when in the presence of one other vehicle traveling in a direct course along the county road. Obviously, the state court

was unmoved by the fact that when sitting at a "T" intersection, a driver must turn to proceed forward—a fact motorists passing by that intersection surely understand. By this measure, we are loathe to conclude the same statute does not at least provide a patrol officer with reasonable suspicion to stop the driver of a vehicle passing traffic at 75-mph on the interstate when that driver "a little ways in front" fails to timely signal an intention to change lanes.  See United States v. Tibbetts, 396 F.3d 1132, 1137 (10th Cir. 2005) (explaining the lawfulness of a traffic stop depends on whether the officer "had reasonable suspicion of a violation, not whether there was actually a violation").  Accordingly, the district court's order granting Defendant's motion to suppress is reversed and this cause remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

11-2109, United States v. Burciaga

**BRISCOE,** Chief Judge, dissenting

I respectfully dissent. It was the government's burden to prove that Officer Valdez had reasonable suspicion that Francisco Burciaga had violated New Mexico's turn signal law. Because the government fails to point to "specific and articulable facts," Terry v. Ohio, 392 U.S. 1, 21 (1968), demonstrating a "'particularized and objective basis'" for believing that a violation occurred, Tibbetts, 396 F.3d at 1138 (quoting United States v. Cortez, 449 U.S. 411, 417 (1981), I would affirm.

Notwithstanding the expansive interpretation it has received from the New Mexico Supreme Court, the law at issue in this case does not require a driver to signal before a lane change in all instances. Hubble, 206 P.3d at 583. The government acknowledges as much. See Aplt. Reply Br. at 12 ("The government does not contend that signaling is required in all cases in which other traffic is present when a lane change occurs."). Rather, whether a signal is required in a given situation depends on the facts. An officer's task is to "determine whether certain facts—the relative positions of the vehicles and their direction of travel—constitute[] a scenario where [traffic] may [be] affected by [a driver's unsignaled] movement." Hubble, 206 P.3d at 587 (emphasis in original). Our task is to determine whether Officer Valdez articulated specific facts showing that he had reasonable suspicion that a violation had occurred.

The most relevant fact must surely be the distance between Burciaga and any

other traffic in the moments leading up to Burciaga's lane change.[4]  But with regard to this critical issue, Officer Valdez said little more than that Burciaga "got a little ways in front" before changing lanes.  Aplt. App. at 111–12.  Officer Valdez never provided a concrete estimate of his actual distance from Burciaga.  Nor did he estimate his own speed.[5]  Instead of articulating specific facts that would allow this court to review the reasonableness of his decision to stop Burciaga, Officer Valdez offered only vague and conclusory testimony as to his "subjective opinions and beliefs."  Maj. Op. at 11.  Although the government's burden of proof in this case could hardly have been lower, it was not met.  Accordingly, I would affirm the district court's order granting Burciaga's motion to suppress.

---

[4] The government concedes that "if another car was on a highway but was a great distance behind or in front of a driver changing lanes, no signal would be needed."  Aplt. Reply Br. at 12.  Cf., e.g., United States v. Burkley, 513 F.3d 1183, 1187 (10th Cir. 2008) ("Clearly, a vehicle traveling approximately one-and-a-half car lengths behind another vehicle 'may be affected' by that vehicle's failure to signal its intention to make a right turn.") (applying Oklahoma law); Clower v. W. Va. Dep't of Motor Vehicles, 678 S.E.2d 41, 49 (W. Va. 2009) (concluding that where officer was at least one block away from a driver, the officer "could not possibly have been affected by [the driver's] right turn"); Grindeland v. State, 32 P.3d 767, 769–70 (Mont. 2001) (rejecting the government's argument that the presence of other vehicles in the vicinity was sufficient for reasonable suspicion, where officer "could not recall the location of those vehicles in relation to the intersection and [the defendant's] vehicle" and therefore had "insufficient objective data" to justify a stop).

[5] Officer Valdez did testify that Burciaga was traveling at the speed limit of seventy-five miles per hour, while his own speed was lower when he pulled back onto the highway after checking on a maintenance truck on the shoulder.  Aplt. App. at 133.  Traveling at a lower speed, he would have been less likely to be affected by the lane change ahead of him.

2