No. 03-157

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 322

CITY OF WHITEFISH,

        Plaintiff and Respondent,

  v.

MELISSA LARGE,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Eleventh Judicial District,
                      In and For the County of Flathead, Cause No. DC 2002-163(a),
                      Honorable Ted O. Lympus, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

        Julianne Hinchey, Hinchey & Hinchey, Kalispell, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; John Paulson,
        Assistant Attorney General; Helena, Montana

        Sean Frampton, Deputy City Attorney, Whitefish, Montana


Submitted on Briefs:  September 18, 2003

Decided:  November 25, 2003


Filed:

_____
                            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Melissa Large was charged with misdemeanor Driving Under the Influence of Alcohol, § 61-8-406, MCA, in Whitefish City Court. She filed a motion to suppress, which was denied. Large then entered a plea agreement, preserving her right to appeal the motion to suppress. The Eleventh Judicial District Court affirmed the findings of the Whitefish City Court. Large now appeals the District Court's order. We affirm.

¶2 Large has stipulated to the following facts. In the early morning hours of September 21, 2000, a named citizen reported to the police that a silver colored vehicle driving north on Spokane Avenue had swerved back and forth. The caller reported the license plate was T79JCI and had a Georgia peach in the center of the plate. The police received a second, anonymous call, which reported that a silver vehicle heading north on Wisconsin Avenue was swerving back and forth. That caller reported the vehicle had gone in and out of a ditch and then into the Wildwood Apartments' parking lot.

¶3 Officers responding entered the Wildwood's parking lot and discovered a silver vehicle parked in the carport for apartment number eight. The vehicle's plates matched the first report. The vehicle's engine was running and music was playing. Officers approached and saw that Large lay across the front seat, sleeping. The officers spoke to Large but she did not respond. The officers then opened the vehicle's door, reached in, turned off the ignition and woke Large. The officers noted various indicators, such as a strong odor of alcohol, which led them to believe Large was intoxicated. The officers questioned Large about the visible damage to the vehicle and then arrested her.

2

¶4    The Wildwood is a private condominium association. The parking lot and entry are screened off from the public. Unit number eight is Large's home. Her carport is the farthest from Wisconsin Avenue and is not visible from the public road. The carport is attached to and directly below her unit. It is entirely enclosed on three sides and has a private stair which leads to the front door of her condominium unit.

¶5    Large raises two issues on appeal. She contends all evidence deriving from the arrest should have been suppressed because (1) in violation of a statute, she was arrested during the night at her home for a misdemeanor committed elsewhere, and (2) the arrest violated her constitutional right to privacy.

¶6    Our standard of review for a denial of a motion to suppress is whether the trial court's findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law. *State v. Toth,* 2003 MT 208, ¶ 8, 317 Mont. 55, ¶ 8, 75 P.3d 323, ¶ 8. We review a district court's conclusions of law to determine whether the law was correctly applied. *State v. Vonbergen,* 2003 MT 265, ¶ 7, 317 Mont. 445, ¶ 7, 77 P.3d 537, ¶ 7.

¶7    Large contends that she was arrested in violation of § 46-1-105, MCA. That statute provides:

> **Time of making arrest.** An arrest may be made at any time of the day or night, except that a person may not be arrested in the person's home or private dwelling place at night for a misdemeanor committed at some other time and place unless upon the direction of a judge endorsed upon an arrest warrant. However, a person may be arrested in the person's home or private dwelling at night if the person is being arrested pursuant to 46-6-311 for the offense of partner or family member assault.

Section 46-6-105, MCA. It is not disputed the arrest occurred at night. Even though her car's engine was running and she was in the car at the time the officers found her, it is not disputed that the arrest was for a misdemeanor she committed elsewhere. The only matter in contention is whether or not for the purposes of § 46-6-105, MCA, Large's carport should have been considered part of her home so as to have precluded the officers from arresting her there without a warrant.

¶8     Although we are not aware of any decision addressing the question of whether a carport is considered part of the "home," there are a few decisions which provide some guidance. In *Whalen,* the defendant was arrested as he was straddling the threshold to the entrance of his home. *City of Billings v. Whalen* (1990), 242 Mont. 293, 295, 790 P.2d 471, 473. Since constitutional privacy protections begin at the "firm line" drawn at the entrance to the home, we concluded that the defendant was within the home when his body crossed that line and thus the warrantless misdemeanor arrest was illegal. *Whalen,* 242 Mont. at 298, 790 P.2d at 475. But when a sheriff arrested a defendant on the walkway outside of his home after responding to a report of drunken driving, we concluded the statute did not apply. *State v. Ellinger* (1986), 223 Mont. 349, 354, 725 P.2d 1201, 1204.

¶9     At common law, a police officer was forbidden to make an arrest for a misdemeanor committed outside of the officer's presence unless the officer had a warrant. *Payton v. New York* (1980), 445 U.S. 573, 591 n.30, 100 S.Ct. 1371, 1382 n.30, 63 L.Ed.2d 639, 653 n.30. A similar rule was codified in Montana requiring an endorsement by a magistrate to allow for nighttime arrests for misdemeanor offenses. Section 94-6003, RCM (1947); *see e.g.,*

4

*State ex rel. Sadler v. Dist. Ct. et al.* (1924), 70 Mont. 378, 387, 225 P. 1000, 1002. The law was changed in 1967 to allow warrantless arrests for misdemeanors at night, with an exception for the home or private dwelling place. Ch. 196, Sec. 1, 1967 Leg., § 95-607 RCM (1947) (now codified at § 46-6-105, MCA). The Commission Comments to the statute indicate:

> [t]his restriction was imposed to prevent the police from harassing a person or searching his home on the pretext of arresting him for a misdemeanor committed at some other time and place. Allowing the police to arrest for a misdemeanor at night can be an effective law enforcement tool provided it is not used as a sham to torment a citizen in his home.

¶10 Although carports may be structurally contiguous with the rest of a house or private dwelling, presence in the carport does not equate to presence in the "home." A carport does not afford the privacy and sanctuary associated with a house. Furthermore, although the view of the carport from the street was obstructed, there was nothing to prevent other condominium unit owners and their visitors from viewing the interior of Large's carport.

¶11 Large relies heavily on the statutory language "private dwelling," asserting that because the lot-lines of her condominium unit include her carport, she was necessarily within her private dwelling. While lot lines do give certain and concrete ownership rights recognized by law, *see,* Montana Unit Ownership Act, Title 70, Chapter 23, Montana Code Annotated, the right to be free from misdemeanor arrest at night is specifically reserved for the home, not the coterminous property appurtenant to the home. Furthermore, the protected interest in a condominium carport might best be recognized as a common element the use of which is reserved for a specific unit owner, rather than as part and parcel of the unit itself.

5

Sections 70-23-102(7)(c) and -102(8), MCA. Lastly, while there will certainly be an overlap between one's home and lot-lines of the property, merely being within the latter does not inexorably lead to a conclusion that as a matter of law one is within the former.

¶12   We conclude that the statutory safeguards that pertain to one's "home" do not encompass a carport attached to a condominium unit. Accordingly, Large was not within the protected area of her home or dwelling when she was found sleeping in her car, parked in her carport. Large's arrest was not in violation of § 46-6-105, MCA.

¶13   Large also claims her Montana constitutional right to be free from unreasonable searches and seizures was violated when the police found her asleep in her car in her carport within the lot lines of her condominium unit. At issue are the provisions of the Montana Constitution, Article II, Sections 10 and 11. They provide:

> **Section 10.  Right of privacy.**  The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.

Art. II, Sec. 10, Mont. Const.

> **Section 11. Searches and seizures.** The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing.

Art. II, Sec. 11, Mont. Const.

¶14   In determining whether or not there was an unlawful search in violation of the Montana Constitution, we look at (1) whether the person has an actual expectation of privacy

6

that society is willing to recognize as objectively reasonable, and (2) the nature of the state's intrusion. *State v. Hamilton*, 2003 MT 71, ¶ 18, 314 Mont. 507, ¶ 18, 67 P.3d 871, ¶ 18. We address each part of this analysis as follows.

¶15   We set forth the principle that an individual may have an expectation of privacy in land beyond the curtilage of the home which society is willing to recognize as reasonable in *State v. Bullock* (1995), 272 Mont. 361, 384, 901 P.2d 61, 75.   In *Bullock* the expectation was evidenced by fencing, "No Trespassing" signs, and a cabin placed on the far side of a hill so as not to be visible from the road.  *Bullock*, 272 Mont. at 384, 901 P.2d at 75.  An expectation of privacy can also be evidenced by some other means which indicate unmistakably that entry is not permitted.  *Bullock*, 272 Mont. at 384, 901 P.2d at 76.

¶16   Society's recognition of the expectation of privacy as reasonable hinges on the unique facts of each situation.  In *State v. Tackitt,* there was no expectation of privacy in the area next to the residence where a car was parked, when the defendant had taken no steps to evidence a privacy expectation in the open and freely accessible area. *State v. Tackitt,* 2003 MT 81, ¶ 22, 315 Mont. 59, ¶ 22, 67 P.3d 295, ¶ 22 (although he did have a reasonable expectation of privacy in items stored in the car trunk).  Similarly, the police were free to drive into a driveway and park in the parking area and walk on the walkway up to a front porch when no fencing or planting of shrubs shielded the home and no steps were taken to shield the porch from public view nor were steps taken to prevent casual visitors from walking to the front door.  *State v. Hubbel* (1997)*,* 286 Mont. 200, 210, 951 P.2d 971, 977.  In *Boyer*, we applied the analogy of the front porch to a boat's transom and we concluded

7

there was no reasonable expectation of privacy in the transom because it was accessible and readily visible to the public. *State v. Boyer,* 2002 MT 33, ¶ 33, 308 Mont. 276, ¶ 33, 42 P.3d 771, ¶ 33.

¶17 It has been stipulated that the Wildwood is a private condominium association, whose parking and entry are screened off from the public. No signs indicate the parking lot is private or indicate entry into the lot is prohibited. Just as the police in *Hubbel* were free to park in the driveway and go on to the porch*,* and the warden in *Boyer* was free to place his foot on the boat's transom, the police here were free to enter into the Wildwood's commonly shared parking area. From that vantage point, they could clearly see Large's vehicle and determine its engine was running and music was playing.

¶18 Further, legislative enactments are an expression of which expectations of privacy society is willing to recognize as reasonable. In *Boyer,* we noted that the expectation of privacy in the live well of the boat was lessened because it was open, its only purpose was to hold river water and fish, and state law requires a person to produce one's catch when requested by a warden and authorizes wardens to inspect the catch. *Boyer,* ¶¶ 15, 33, 39. Similarly here, we note that state law prohibits driving under the influence on "all ways of the state open to the public." Sections 61-8-401 and -406, MCA. "Ways of the state open to the public" includes any "highway, road, alley, lane, parking area, or other public or private place adapted and fitted for public travel that is in common use by the public." Section 61-8-101, MCA. In *Schwein*, we applied that definition to uphold the conviction of a man found sleeping in his car parked in his privately leased parking space in front of his

8

business. *State v. Schwein*, 2000 MT 371, 303 Mont. 450, 16 P.3d 373. In *City of Billings v. Peete* we looked to the legislative history of the statute to determine "ways of the state open to the public" was intended to preclude drunk driving in private parking lots, so long as the lot was fitted for public travel and in common use by the public. *City of Billings v. Peete* (1986), 224 Mont. 158, 161, 729 P.2d 1268, 1270. We have also concluded that "ways of the state open to the public" covered a privately owned, one lane right of way 3/10 of a mile long which provided access to three residences. *State v. Weis* (1997), 285 Mont. 41, 945 P.2d 900. Although these decisions do not involve claims of constitutional privacy, they nonetheless illustrate the point that, in light of enactments by the Montana legislature, society does not recognize a driver's expectation of privacy in "ways of the state open to the public," a term which encompasses private parking lots open to the public. Section 61-8-101, MCA. We conclude that Large did not have an expectation of privacy which society would be willing to recognize as reasonable thereby prohibiting the police from arresting her in her own carport.

¶19    We next consider the nature of the state's intrusion. In *Bullock,* it was overly intrusive when agents of the state proceeded past the "No Trespassing" signs and tread into areas which were gated and for which the agents had previously asked permission to enter. *Bullock*, 272 Mont. at 384, 901 P.2d at 76. In *Hubbel* it was not overly intrusive when the police parked in the area which would normally be used by visitors and walked up the walkway where they could see certain evidence and proceeded on to the front porch, where other evidence was plainly visible. *Hubbel,* 286 Mont. at 210, 951 P.2d at 977. In *Boyer*,

we recognized a warden's intrusion onto a boat transom to inspect catch was minimal where the inspection was specifically authorized by law and focused on the live well. *Boyer,* ¶¶ 33, 42.

¶20    Here, the police did not proceed in the face of no trespassing signs nor did they open any gates. Indeed, from Large's description of her carport it would be comparable to the front porch in *Hubbel*. Casual visitors might easily walk through her carport to reach the stairs to her front door, just as in *Hubbel* where the police were free to walk up to the porch. The officers' entry into the common-area parking lot where they could see what was readily visible to any visitor was not overly intrusive. We conclude that the District Court correctly applied the law. Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ JIM RICE