FILED

November 13 2007

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 06-0538

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 296

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

CHARLES ROBERT DUNN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-06-168
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Jim Wheelis, Chief Appellate Defender; Shannon L. McDonald (argued),
Assistant Appellate Defender, Helena, Montana

      For Appellee:

           Honorable Mike McGrath, Attorney General, Sheri K. Sprigg (argued),
Assistant Attorney General, Helena, Montana

           Fred Van Valkenburg, County Attorney; Katie Harper, Deputy
County Attorney, Missoula, Montana

                  Heard and Submitted:  June 13, 2007

                         Decided:  November 13, 2007

Filed:

_____
                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Appellant Charles Dunn (Dunn) appeals from the order of the Fourth Judicial District Court, Missoula County, denying his motion to suppress evidence.  We affirm.

¶2    We consider the following issue on appeal:

¶3    Did the District Court err by denying Dunn's motion to suppress evidence based upon a warrantless search of Dunn's property?

### FACTUAL AND PROCEDURAL BACKGROUND

¶4    On August 5, 2005, at approximately 4:00 a.m., Missoula County Sheriff's Deputies Tillman, Lloyd, and Kennedy, with Sergeant Orr, responded to a noise complaint at Dunn's residence on Hiberta Street in Missoula.  The Dunn residence is located on a one-acre lot, with the house on the front half of the lot.  Trees and shrubbery obscure the view of the house from Hiberta Street.  A crescent shaped driveway, which provides access to the front of the house from Hiberta Street, cuts through the trees in two places.  Driveways on either side of the house lead from the crescent shaped driveway to a parking area in the back of the house. Beyond the parking area, a post and wire fence encloses some portion of the backyard, and a fire pit is located inside the fenced area, which is accessed by a large metal rod fence lodged in an open position.

¶5    Upon arriving at the residence, Sergeant Orr recognized the Dunn residence as one they had responded to on multiple prior occasions to investigate noise complaints.  The officers observed that the inside of the house was dark and there was smoke rising from a bonfire in the backyard.  The officers could also hear voices and loud music coming from the backyard.  In an effort to make contact with the person responsible for the party, the

2

officers proceeded down a driveway on the side of the house. As they entered the backyard they observed an empty truck blaring music next to a bonfire in the fire pit area of the backyard. The officers also observed approximately seven adult males standing around the bonfire. In the darkness, one male began to approach the officers and Deputy Tillman asked him to return to the bonfire. Deputy Tillman then asked another man to turn off the music and asked who was responsible for the party. Dunn announced that it was his party. Deputy Tillman asked for Dunn's identification and ran his name through the dispatch records. Dispatch responded that there was an outstanding arrest warrant for Dunn and the officers arrested him. Pursuant to the arrest, Deputy Lloyd searched Dunn and seized a "hash" pipe with marijuana, found on his person.

¶6 Dunn was subsequently charged in Justice Court of Missoula County with criminal possession of dangerous drugs and criminal possession of drug paraphernalia. Dunn sought to suppress the pipe and marijuana seized by the police as evidence illegally obtained by a warrantless entry on his property. The Justice Court denied his motion, and Dunn appealed to the District Court. Neither the Justice Court nor the District Court held a hearing on the motion to suppress and both courts decided the motion on the basis of briefs and attached exhibits. The factual record, therefore, is limited. The District Court denied Dunn's motion to suppress the evidence. Dunn appeals.

**STANDARD OF REVIEW**

¶7 We review the denial of a motion to suppress to determine if the district court's findings of fact are clearly erroneous and whether its interpretation and application of the law is correct. *State v. Pierce*, 2005 MT 182, ¶ 12, 328 Mont. 33, ¶ 12, 116 P.3d 817,

¶ 12. Findings are clearly erroneous if they are unsupported by substantial evidence, the court misapprehended the effect of the evidence, or review of the record convinces us that a mistake has been made. *Pierce*, ¶ 12.

## DISCUSSION

**¶8     Did the District Court err by denying Dunn's motion to suppress evidence based upon a warrantless search of Dunn's property?**

¶9     Dunn argues that the District Court erred when it denied his motion to suppress because the evidence was a product of an illegal entry onto his property. Dunn asserts that he has a reasonable expectation of privacy in his backyard and any entry by the officers without a search warrant was unlawful because no exception to the search warrant requirement exists on these facts. As such, Dunn claims that any evidence gained as a result of the illegal entry should be suppressed.

¶10     In response, the State argues that given the circumstances, Dunn did not have a reasonable expectation of privacy in his backyard area. In the alternative, the State asserts that if Dunn did have a reasonable expectation of privacy in the fire pit area, the warrantless entry was lawful under the "exigent circumstances" doctrine or the "community caretaker" doctrine. Last, the State argues that if an exception to the warrant requirement does not apply, the evidence seized is not a "fruit" of the intrusion.

¶11     The Fourth Amendment of the United States provides that persons shall be free from unreasonable searches and seizures. The Montana Constitution contains nearly identical language that also provides for an individual's right to be free from unreasonable searches and seizures. Mont. Const. art. II, § 11. The Montana

4

Constitution, unlike the United States Constitution, also specifically enumerates an individual's right to privacy. Mont. Const. art. II, § 10. Accordingly, we have held that the unique language of the Montana Constitution "affords citizens a greater right to privacy, and therefore, broader protection than the Fourth Amendment in cases involving searches of, or seizures from, private property." *State v. Bullock*, 272 Mont. 361, 384, 901 P.2d 61, 75 (1995).

¶12 In determining if a search violated the Montana Constitution, we look to two factors: "(1) whether the person has an actual expectation of privacy that society is willing to recognize as objectively reasonable, and (2) the nature of the state's intrusion." *City of Whitefish v. Large*, 2003 MT 322, ¶ 14, 318 Mont. 310, ¶ 14, 80 P.3d 427, ¶ 14. Only where an objectively reasonable expectation of privacy has been intruded on by the State, or the State's entry was overly intrusive, do we consider if an unlawful entry is permitted according to an enumerated exception to the warrant requirement. We thus consider these factors in turn.

¶13 In ascertaining if a person has a legitimate expectation of privacy, we look to the circumstances, including "the place of the investigation, the control exercised by the person over the property[,] . . . and the extent to which the person took measures to shield the property from public view, to communicate that entry is not permitted . . . ." *State v. Hubbel*, 286 Mont. 200, 209, 951 P.2d 971, 977 (1997). In *Bullock*, we found that a reasonable expectation of privacy in land may exist where the expectation is evidenced by fencing, "No Trespassing" signs, or by other means indicating that entry is not permitted. *Bullock*, 272 Mont. at 384, 901 P.2d at 76. We explained that "[w]hat a

5

person knowingly exposes to the public is not protected, but what an individual seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Bullock*, 272 Mont. at 375, 901 P.2d at 70. Pursuant thereto, we have concluded that no reasonable expectation of privacy exists in several situations involving space outside the home. *See State v. Shults*, 2006 MT 100, ¶ 16, 332 Mont. 130, ¶ 16, 136 P.3d 507, ¶ 16 (concluding no reasonable expectation of privacy for items inside a wire fence but in plain view both in front and back of the house); *City of Whitefish*, ¶ 18 (concluding no reasonable expectation of privacy in a carport in a private condominium association parking lot that was open to the public); *State v. Tackitt*, 2003 MT 81, ¶ 22, 315 Mont. 59, ¶ 22, 67 P.3d 295, ¶ 22 (stating no expectation of privacy in the area next to the residence where a car was parked, when the defendant had taken no steps to evidence a privacy expectation in the open and freely accessible area); *Hubbel*, 286 Mont. at 210, 951 P.2d at 977 (holding no reasonable expectation of privacy in property leading to the front door). While each case differs as to our reasoning for determining that there was or was not a reasonable expectation of privacy, what is clear is that "[s]ociety's recognition of the expectation of privacy as reasonable hinges on the unique facts of each situation." *City of Whitefish*, ¶ 16.

¶14 Here, Dunn did not have a reasonable expectation of privacy that society is objectively willing to accept. First, we consider Dunn's use of the property at the time of the intrusion. When police arrived at 4:00 a.m., Dunn, with a group of approximately seven people, was blaring music in the backyard from a car stereo. The party was boisterous enough to cause a neighbor to call in a complaint. Pursuant to § 45-8-

6

101(1)(b), MCA, Dunn was effectively engaged in disorderly conduct by "making loud or unusual noises" that were disturbing the peace of the neighborhood. Because the music was still playing when the officers arrived, an ongoing crime was occurring in the officers' presence. Second, an expectation of privacy must be <u>objectively</u> reasonable to society. We find it improbable that society is willing to accept a privacy expectation as "reasonable" where the individual uses his property to disturb the peace of others at 4:00 a.m. in the morning. Dunn was not conducting himself in a "private" manner, but rather, to the contrary, his imposition upon other residents was a very public act. Given these circumstances, we find that Dunn did not have an expectation of privacy in his backyard at the time police arrived to investigate.

¶15 Next we consider the nature of the State's intrusion. In *Bullock*, we found that the State's invasion was overly intrusive because the officers entered private property that was fenced and gated, after ignoring posted warnings. 272 Mont. at 384, 901 P.2d at 76. Conversely, in *Hubbel*, the Hubbels had not erected a fence around their property or gated their driveway. 286 Mont. at 210, 951 P.2d at 977. There, we found that it was not overly intrusive for the police to drive into the driveway, park in the area normally used by visitors, travel up a walkway to the front porch, and seize evidence that was in plain view. *Hubbel*, 286 Mont. at 210, 951 P.2d at 977. In *City of Whitefish*, we concluded that the officers' entry through the common-area parking lot was not overly intrusive in the absence of no trespassing signs and gates. *City of Whitefish*, ¶ 20. As in the determination of an objectively reasonable expectation of privacy, the determination of whether an entry was overly intrusive is based on each case's unique set of facts.

¶16    Here, the officers entered Dunn's property in response to a noise complaint. At the time of entry, loud noise was continuing. Upon seeing that the front of the house was dark and recognizing that the noise was coming from the backyard, the officers traveled along the driveway toward the commotion. The officers used the same path that a visitor would use in accessing the back of the house, and, once in the backyard parking area, the truck playing the music, the bonfire, and the adults standing around the fire were in plain view. This case is therefore analogous to our determination in *Hubbel* that entry by the police was not overly intrusive where the police acted in the same manner as any casual visitor. 286 Mont. at 210, 951 P.2d at 977. The officers here did not "ignore posted warnings, hop fences, open gates, or slip through bushes intended to screen the home from view." *Hubbel*, 286 Mont. at 210, 951 P.2d at 977. Rather, the officers acted in a manner consistent with investigating an ongoing noise complaint and remained on an open and unobstructed path to the backyard. Thus, the nature of the intrusion here was reasonable.

¶17    In sum, Dunn did not have a reasonable expectation of privacy given the unique circumstances of this case. His ongoing disorderly conduct invited the police to investigate the complaint, and the investigation was reasonable and non-intrusive under these facts. Accordingly, we conclude that the District Court correctly applied the law and properly denied Dunn's motion to suppress.

¶18    Affirmed.

/S/ JIM RICE

8

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice W. William Leaphart concurring.

¶19     I specially concur with the result reached by the Court although I would reach that result for different reasons.

¶20     I conclude that, even assuming arguendo that the officers' entry into Dunn's backyard violated his expectation of privacy, the discovery of the pipe was attenuated from the allegedly illegal entry, and thus the pipe was admissible.

¶21     The officers did not observe the hash pipe as a direct result of their entering Dunn's backyard. Rather, they only discovered the pipe after running a check on Dunn's name and discovering that there was an outstanding warrant for his arrest. Upon effectuating the arrest, they found the pipe. Thus, the evidence was the fruit of an outstanding arrest warrant and was not the fruit of an illegal entry into Dunn's backyard.

¶22     In *State v. New*, 276 Mont. 529, 536, 917 P.2d 919, 923 (1996), we set forth the exceptions to the "fruit of the poisonous tree" doctrine:

> [D]erivative evidence is admissible if it is (1) attenuated from the constitutional violation so as to remove its primary taint; (2) obtained from an independent source; or (3) determined to be evidence which would have been inevitably discovered apart from the constitutional violation.

9

The United States Supreme Court recently affirmed that "exclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence. Our cases show that but-for causality is only a necessary, not a sufficient, condition for suppression." *Hudson v. Michigan*, ___ U.S. ___, 126 S. Ct. 2159, 2164 (2006).

¶23 In *U.S. v. Green*, 111 F.3d 515 (7th Cir. 1997), the police learned the names of the passengers in a car during an illegal traffic stop, ran a computer check, and found an outstanding arrest warrant for one of the passengers. While the officers were conducting an arrest, they searched the car and discovered cocaine and a gun. In denying the defendant's motion to suppress, the Seventh Circuit established the following test for "attenuated connection":

> [T]he Supreme Court set forth three factors for determining whether the causal chain has been sufficiently attenuated to dissipate the taint of the illegal conduct: (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. In the final analysis, however, the question is still whether the evidence came from "the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Green*, 111 F.3d at 521 (quoting *Wong Sun v. U.S.*, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963)).

¶24 The court in *Green* found that although the time period between the illegal stop and the search of the car was brief, the lawful arrest constituted an intervening circumstance. Since the police had not engaged in official misconduct, the cocaine and the gun were not subject to the exclusionary rule. The Court explained:

10

> It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant—in a sense requiring an official call of "Olly, Olly, Oxen Free." Because the arrest is lawful, a search incident to the arrest is also lawful. The lawful arrest . . . constituted an intervening circumstance sufficient to dissipate any taint cause by the illegal automobile stop.

*Green*, 111 F.3d at 521.

¶25   In *Idaho v. Bigham*, 117 P.3d 146 (Idaho App. 2005), the Court applied the attenuation doctrine, concluding that the existence of Bigham's outstanding arrest warrant was an intervening circumstance.  The court reasoned that "an officer's act of stopping and questioning a person who is walking down a residential street at 4:00 a.m. is not outrageous, and the encounter, from initial contact to arrest, lasted only a few minutes." *Bigham*, 117 P.3d at 149.  Further, the officer conducted a warrant check only after he recalled that Bigham's name was on a warrant list. The court thus concluded that the taint from the alleged illegal seizure of Bigham was attenuated.  *Bigham*, 117 P.3d at 149.

¶26   In *McBath v. Alaska*, 108 P.3d 241 (Alaska App. 2005), police officers learned the name of the defendant during an arguably illegal investigative stop. They then ran a warrants check, found an outstanding arrest warrant, executed the warrant and conducted a search incident to arrest during which methamphetamine was discovered. The Alaska court held that "any taint flowing from the arguably illegal investigative stop was too attenuated to affect the admissibility of the methamphetamine." *McBath*, 108 P.3d at 250. *See also*, *Hall v. Wyo.*, 166 P.3d 875 (Wyo. 2007) (evidence collected during pat down search was not fruit of illegal wiretap but of subsequent valid traffic stop).

11

¶27 Applying the above principles to the present case, I conclude that execution of the outstanding warrant was an "independent intervening circumstance" that dissipated the taint of any arguably unlawful entry.

¶28 For the above reasons, I would affirm the denial of Dunn's motion to suppress.

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson joins the concurring opinion of Justice Leaphart.

/S/ JAMES C. NELSON